FILED

APR 10 2023

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LB

James E Seitz

Plaintiff,

CV 23 - 1716

vs.

International Brotherhood Teamsters

Teamsters Local 986

Defendant(s).

CASE NO. _____

EMPLOYMENT DISCRIMINATION
COMPLAINT

1. Plaintiff resides at:

Address 33459 Caliban Drive

City, State & Zip Code Freemont CA 94555

Phone 650-787-1110

2. Defendant is located at:

Address 25 Louisiana Avenue N.W.

City, State & Zip Code Washington DC 26061

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is conferred on this Court by 42 U.S.C. Section 2000e-5. Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g).

4. The acts complained of in this suit concern:

a. __ Failure to employ me.

b. __ Termination of my employment.

Form-Intake 2 (Rev. 4/05)                    - 1 -

c. __ Failure to promote me.

d. __ Other acts as specified below.

_____

_____ SEE attached _____

_____

_____

_____

_____

5.   Defendant's conduct is discriminatory with respect to the following:

a. __ My race or color.

b. X My religion.

c. __ My sex.

d. __ My national origin.

e. __ Other as specified below.

_____

6.   The basic facts surrounding my claim of discrimination are:

_____

_____ SEE Attached _____

_____

_____

_____

_____

_____

_____

7.   The alleged discrimination occurred on or about ____ February 2 2022

(DATE)

8.   I filed charges with the Federal Equal Employment Opportunity Commission (or the

California Department of Fair Employment and Housing) regarding defendant's alleged

Form-Intake 2 (Rev. 4/05)                 - 2 -

discriminatory conduct on or about _July 21, 2022_.

(DATE)

9.    The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter (copy attached), which was received by me on or about ___Jan 14 2023___.

(DATE)

10.    Plaintiff hereby demands a jury for all claims for which a jury is permitted:

Yes _X_    No _____

11.    WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, costs, and attorney fees.

DATED: ___4-10-2023___    _____

SIGNATURE OF PLAINTIFF

(PLEASE NOTE: NOTARIZATION    ___James E Seitz___

IS NOT REQUIRED.)    

PLAINTIFF'S NAME

(Printed or Typed)

Form-Intake 2 (Rev. 4/13)                  - 3 -

James E Seitz
33459 Caliban Drive
Fremont CA 94555

*PRO SE PLAINTIFF*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES E SEITZ

                          Plaintiff,

        vs.

INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,

TEAMSTERS LOCAL 986,

                    Defendants.

1

## PARTIES

## PLAINTIFF

James E Seitz

33459 Caliban Drive Fremont CA 94555

650-787-1110

Email - jimseitz8@gmail.com

## DEFENDANTS

International Brotherhood of Teamsters

25 Louisiana Avenue NW

Washington D.C. 20001

Teamsters Local 986

1430 East Holt Avenue

Covina CA 91724

## COMPLAINT

Plaintiff James E. Seitz brings this action against Defendants Teamsters Local 986 and International Brotherhood of Teamsters (IBT) (collectively, "Defendants") for Violation of Title VII 42 U.S.C. § 2000e, *et seq.* Religious Discrimination, breach of the unions duty of fair representation under the Railway Labor Act (RLA) 45 U.S.C. § 151, et seq. For the complaint, Plaintiff states as follows upon personal knowledge as to those matters and upon information and belief as to the remaining allegations.

2

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1337 in that it arises under the laws of the United States and Acts of Congress regulating commerce, specifically the Railway Labor Act, 45 U.S.C. §151, et seq. The damages sought exceed $10,000.00.

2. Venue is proper in this Court under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims arose in this district.

## PARTIES

3. Plaintiff James E. Seitz is a resident of the state of California and the county of Alameda. He was a 32-year Aircraft Technician, an FAA Certified Airframe and Powerplant with an FCC certification.

4. Defendant Teamsters Local 986 1430 East Holt Avenue Covina CA 91724 is a Local within the IBT that was at all relevant times the certified bargaining representatives under the Railway Labor Act for Plaintiff, 45 U.S.C. §151, et seq. The Defendants principle place of business is Los Angles, California.

5. Defendant International Brotherhood of Teamsters (IBT) 25 Louisiana Avenue NW Washington D.C. 20001 is the national labor union and was at all relative times the certified collective bargaining representative under the Railway Labor Act for the Plaintiff. The IBT Defendants principal place of business is Washington D.C.

6. Plaintiff has the capacity and standing to sue. Defendants have the capacity to be sued. All conditions and precedent have been satisfied.

3

## INTRODUCTION

7. When United Airlines ("United") announced a mandatory vaccination program for its unionized Aircraft Technicians in August of 2021 as a new condition of employment. Defendants in this case were the exclusive bargaining agent for the United Technicians Class and Craft. The United IBT union representatives gave no pushback to the unlawful changes in the terms of employment, wages, working conditions, including the loss of medical and pension benefits and seniority.

8. These company-imposed changes to the United Technicians CBA were in violation of §152 Seventh of the RLA.

   *No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title.*

9. These company-imposed changes established three new classes of employees and in the Defendant union's own words in its EEOC complaint filed against the company discriminated against and retaliated against United Technicians for their religious beliefs.

10. Those United Technicians who sought religious exemptions were the most severely persecuted. United Technicians who sought a religious exemption from the Company's new conditions of employment would have to sign a Reasonable Accommodation document (RAP) and agree to new employment conditions in violation of the RLA and CBA that placed them on unpaid leave without medical or pension benefits for an extended unknown length of time and permanently reduce their seniority.

11. The defendant union did not file grievances against the company mandate that violated §152 Seventh of the RLA and other clear provisions in the United Technicians CBA including Article 1 that protected United Technicians from being discriminated against for their religious beliefs and Article 11 that

4

provided specifically, the right for United Technicians to use their own accrued Sick Leave during an epidemic.

## FACTS

12. On August 31, 2021, the Plaintiff provided the company a letter requesting a religious exemption Reasonable Accommodation (RAP) from the newly established COVID-19 experimental vaccine company work requirements. The Company closed out the RAP request on September 7 stating the Plaintiff did not respond within their 3 day limit with an additional verification third party letter to affirm his sincerely held religious beliefs. This unreasonable 3 day company imposed time limit effectively terminated his 32 year career at United Airlines. *(Exhibit #1 Religious RAP Request)*

13. On September 19, 2021, the Plaintiff filed an EEOC complaint for religious discrimination against United Airlines for refusing to accept his religious exemption against taking an experimental vaccination that had at that time based on the FDA and CDC VAERS reports already killed 14,000 people. *(Exhibit #2 Sept 2021 FDA CDC VAERS Report)*

14. On September 22, 2021 The defendant union's Airline Division's appointed Director David Bourne filed an EEOC complaint against United Airlines for Title VII violations of discrimination and retaliation. The IBT Airline Division did not file a grievance against United for violation of the terms of the collective bargaining agreement. (CBA).
*(Exhibit #3 IBT AD EEOC Complaint 9-22-2021)*

15. On September 24th, 2021, the plaintiff filed a grievance requesting the right to exercise his accrued personal sick time under Article 11 Sick Leave which clearly states quote *"Sick pay may also be utilized when an employee's presence would jeopardize the health of others because of exposure to a contagious disease." (Exhibit #4 Request Sick Leave During a Pandemic)*

16. The Plaintiff cited past practice by United Airlines and the Teamsters during the pandemic just months earlier when United had placed technicians on paid sick leave that were going to be separated from the company under the Voluntary Separation Leave (VSL). The technicians were placed on paid sick leave even though they were not sick, until their time of separation. This extended Technicians' pay and benefits before separation from the company.

17. The plaintiff also cited in his grievance the government FDA and CDC VAERS reports which had already documented over 675,000 adverse reactions and over 14,000 deaths associated with the vaccines. The huge spike in deaths and disability were caused by the experimental vaccines. The Company denied the grievance requesting Sick Leave during a pandemic.

18. Greg Sullivan the IBT Line rep stated in a meeting with the plaintiff about the closing his epidemic sick leave grievance that if you are terminated, we will bring this matter up. The Plaintiff stated he would not consent to the Union closing his grievance. The teamsters never argued for this clear and unambiguous language that was a long established existing contractual right.

19. The defendant union never held a grievance hearing to argue for the plaintiff's contractual right to use sick leave during the pandemic. The union Defendants never provided an interpretation or rational reason why they ignored the clear and unambiguous epidemic sick leave language in the CBA.

20. The plaintiff's grievance to exercise his right to accrued Sick leave was disregarded by the union and closed arbitrarily without his consent. The defendant union closed the grievance stating it was premature because the plaintiff wasn't being placed on unpaid leave. The union Defendants never provided an interpretation on the use of Sick leave during an epidemic.

6

21. The Plaintiff did not have to be placed on leave to exercise these benefits. It is a Duty of Fair Representation Violation (DFR) violation to close a grievance without the employee's consent. *Stevens v. Teamsters Local 2707, (9th Cir WD 1980)*

22. On October 26th, 2021, the Plaintiff submitted a third-party letter on his company iPad as required for the religious Reasonable Accommodation Process (RAP). The following morning, he was called into a fact-finding meeting and asked by management if he was vaccinated. The Plaintiff stated he was not vaccinated and provided a copy of the third-party verification letter of religious belief. The Plaintiff was then held out of service pending an investigation.

23. On November 2, 2021, a fact-finding meeting was held in SFO. The Union reps were Greg Sullivan and Dale Mitchell. IBT rep Greg Sullivan did not argue for the sick leave rights outlined in Article 11 as he had stated to the Plaintiff before or that other that other technicians were provided sick leave prior to their separation process by United Airlines.

24. The Plaintiff provided 16 exhibits and read a statement concerning the company's experimental vaccine mandate that had by the October 22, 2021, FDA and CDC VAERS reports killed 17,600 people and caused over 800,000 adverse reactions. The Plaintiff also stated that the FDA approved vaccine was not even available at that time. These statements were verified by the FDA in January of 2022. *(Exhibit #5 Plaintiff's Initial Hearing Statement)*

25. On November 5, 2021, the Plaintiff was terminated from his 32 years of employment at United Airlines for allegedly violating the newly implemented Company "Working Together Guidelines" for failing to submit a third-party verification of religious beliefs within the arbitrary 3-day time limit set by the Corporation.

7

26. On January 7, 2022, IBT Local 856/986 Appointed Business Agent Mark DesAngles sent an email notifying the Plaintiff of his System Board of Adjustment (SBA) hearing for his failure to comply with the United Airlines experimental vaccine policy.

27. The Defendants union stated that the termination of the Plaintiff was for a violation of a new company policy. The Company Policy required employees requesting religious exemptions to surrender their contractual rights wages, benefits and seniority and be placed on unpaid leave for an indefinite period.

28. The Technicians receiving a Medical RAP retained the use of sick time which included other contractual benefits like health insurance and seniority accrual.

29. United then rewarded those who took the EUA vaccines with extra pay. The new Company policy was discriminatory in violation of the CBA and created three classes of employees and treated each one progressively worse. *(Exhibit #6 Extra Pay for Vaccinated Technicians)*

30. On January 17, 2022, the Plaintiff emailed IBT rep Mark DesAngles to request that he be allowed to have a stenographer present to document the termination hearing proceedings. IBT rep DesAngles replied on January 18th stating that stenographers are not allowed at SBA hearings. *(Exhibit #7 2022-1-18 IBT Mark DesAngles denial of Stenographer for hearing)*

31. On January 20, 2022, the hearing took place and IBT Local 856/986 Appointed Business Agent Javier Lectora presented for the union. The Plaintiff has no stenographic record of the meeting because it was denied by the union. IBT rep Javier Lectora did not argue for the contractual right to use Sick Time during a pandemic as outlined in Article 11.

32. There were four board members at the SBA hearing and one observer each for the company and the union. Two of the union members, Bob Fisher and Dave Saucedo and the presenter Javier Lectora, all have a well-documented history

8

of making statements against the Plaintiff. These union board members had a documented animus against the Plaintiff for his long standing and outspoken criticism of the Teamsters concessionary contracts and long-established pattern of failing to enforce the negotiated terms of the United Technicians CBA.

33. The union's refusal to allow the Plaintiff a stenographer at the termination hearing has harmed his defense in any future litigation. The Plaintiff had no notice of who would be on the board or the ability to object to these biased union board members. The prejudiced IBT union board members on the SBA board denied the Plaintiff any chance of a fair and impartial hearing or ruling.

34. The Plaintiff prepared a written statement and again presented exhibits to both the union and the company for his defense. The Plaintiff showed the company's vaccine policy was based on factually incorrect statements that the union and the company used to coerce United technicians into taking an experimental vaccine or lose their jobs.

35. The Plaintiff presented to the SBA board the November 11, 2021, court decision concerning the Department of Defense case Jane/John Doe vs Austin DOD where the court ruled that the DOD cannot mandate vaccines that have only an Experimental Use Authorization (EUA).

36. The court further stated that the EUA drugs and Comirnaty were not interchangeable. This nullified the union and company claims that the vaccines required as a condition of employment were FDA approved. The FDA approved Comirnaty was not even available.

37. The Plaintiff then presented to the SBA board the FDA and CDC website that clearly states Comirnaty was still not available as of December 23, 2021. The only FDA approved vaccine for the new United Company policy was not even available for use after many United Technicians were already terminated for not complying with the Company Vaccine mandate. The union SBA board ignored these facts and allowed United to terminate technicians based on an FDA approved vaccine that wasn't available to them.

9

38. On January 13, 2022, the Supreme Court ruled OSHA mandate unconstitutional. Even though the OSHA mandate was found to be flawed the United IBT union board members still found no reason to advocate for the Plaintiff or other United Technicians who had been wrongly terminated.

39. The Plaintiff presented to the SBA reps the latest FDA and CDC VAERS government reports. When the Plaintiff filed the first grievance for epidemic sick leave the VAERS death toll was 14,000. At his first termination hearing on November 2, 2021, the FDA CDC VAERS reported deaths had increased to 17,000. Finally at the January 20, 2022, SBA termination hearing, that number had increased to 21,000 with over a million adverse events.

40. These government statistics provided an ever-increasing death signal from the first initial hearing. Never once did the Teamsters union reps or SBA board members ask about the FDA CDC VAERS reports I cited in my defense. *(Exhibit #8 2022-1-7 FDA CDC VAERS Report)*

41. The United Teamsters SBA board members never once asked a question about the safety or effectiveness of vaccines the United technicians were now required to take as a new condition of employment.

42. The vaccines dropped from 90% effective in August of 2021 when the IBT Airline Division recommended all United Technicians take the shots, to completely ineffective by the time of the Plaintiffs final SBA hearing. In January of 2022 the FDA and CDC said the vaccines will not stop infection or transmission.

43. The Plaintiff then presented a news article dated January 1, 2022, from Indiana Life Insurance CEO Scott Davison who states *"death rates are up 40%. To put that in comparison just 10% is a 3 Sigma event or a once-in-200-year catastrophe, so 40% is just unheard of."* The union board members ignored these clear warning signs that the mandated vaccines were harming working people. *(Exhibit #9 Indiana Life Insurance 2021 death rates)*

10

44. The vaccines the IBT United union reps advocated United technicians to take were neither safe nor effective. In March of 2022 Pfizer executives admitted in they were never tested to stop transmission so essentially the United vaccine mandate was pointless. The FDA and CDC VAERS reports shows they are the deadliest vaccines in the VAERS reportable history. *(Exhibit #9a Plaintiffs SBA Hearing Statement)*

45. On January 31, 2022 Local 856/986 IBT Appointed BA Mark DesAngles sent an email informing the Plaintiff the SBA denied the grievance and sustained the termination for failure to comply with the Working Together Guidelines". IBT rep DesAngles stated the grievance is closed and the union will no longer pursue it. *(Exhibit #11 IBT Local 986 SBA Denial Letter)*

46. On February 11, 2022, the Plaintiff sent a letter to United Labor Relations rep. Tom Reardon requesting the RLA statutory right to have the minor dispute presented in a fair and impartial hearing with the counsel of his choice with a neutral arbitrator as provided in the Railway Labor Act §151 et seq. *(Exhibit #12 Plaintiff Request for RLA Arbitration)*

47. On February 14, 2022, United Labor rep Tom Reardon who also served on the board hearing denied the Plaintiff's request for arbitration citing the United Teamsters 2016-2022 CBA grievances procedures. The grievance procedures the IBT has agreed to are in violation of the RLA standards and have been used by the union to deny United Technicians their statutory rights to arbitration. *(Exhibit #13 United Denial of Statutory Rights)*

48. The Defendant union and the Company have established a grievance system they exclusively control that denies United Technicians their statutory rights under the RLA.

49. The RLA grievance provides the employees with the statutory right for a fair and impartial hearing of minor disputes with the counsel of their choice chaired by a neutral arbitrator.

50. The right to a fair and impartial hearing with the counsel of their choice is supported by the Supreme Court in Elgin v Burley 1945 and again in Landers v Consolidated Rail 1988, it was reaffirmed most recently against United Airlines and ALPA in the 8ᵗʰ Cir 2022 in Bumpus v ALPA. The court *Bumpus* stated that the "company and union cannot act as gatekeepers to the arbitration process. *(Elgin v Burley US 1945) (Landers vs Consolidated Rail US 1988) (Bumpus v ALPA 7ᵗʰ Cir 2022)*

51. February 2022 the defendant union's Airline Division changed its appointed director. The IBT President Sean O'Brian appointed a former long time United Airlines Corporate Vice President Joe Ferreira to lead the IBT Airline Division. The former United Airlines Corporate Vice President had no prior union experience.

52. The IBT Airline Division had an ongoing EEOC complaint against the United Airlines corporation for religious discrimination and retaliation against its own union members. The IBT appointed a former United executive from the same company that violated the United Technicians Title VII religious rights.

53. The Teamsters IBT Airline Division then removed the EEOC Complaint it filed on behalf of the United membership without notice or an explanation sometime after the appointment of Joe Ferreira the former United Airlines Vice President. The Plaintiff then filed a complaint against the IBT for their failure to uphold his CBA religious rights against Discrimination and Retaliation.

54. United technicians who never filed an EEOC complaint and were terminated for failing to comply with the company's vaccine mandate were unaware the Teamsters union had withdrawn the complaint filed on their behalf, leaving them remediless against the religious discrimination and contract violations committed by United and the union.

12

### Two Different RLA Interpretations at the IBT Airline Division

### One for United Technicians and another for UPS Technicians

55. There are two large groups of aircraft technicians in the IBT Airline Division United and UPS. At UPS, IBT Local 2727 followed the RLA and their CBA and protected their technicians from religious discrimination. The RLA prohibits any changes to the wages, terms and working conditions without negotiations. §152 Seventh. The IBT Constitution states that all modifications to the CBA or letters of agreement must be voted on.

56. Teamsters Local 2727 President Tim Boyle cited the RLA when he stated that there will be no vaccine mandate without a letter of agreement. Tim Boyle went on to state that no aircraft technicians at UPS were required to discuss with management their vaccine status.

57. The IBT President of Local 2727 stated to his technicians that the company had no right to question the vaccine status of UPS mechanics. *(Exhibit #14 UPS IBT Local 2727 No Harassment over Vaccine)*

58. A tale of two different unions with the same RLA requirements and Constitution. Why did the United IBT reps not enforce the CBA, the RLA and the IBT Constitution?

### The United Religious RAP policy discriminated against mechanics who sought a waiver were a violation of RLA CBA IBT Constitution and Past Practice

59. The RLA and the IBT Constitution prohibit any changes to the terms and working conditions of the CBA without negotiations and vote of the membership.

60. Past practice at United was established in June of 2008 when United wanted to change the "Success Sharing Program" in the United Technicians CBA.

13

The Company presented a letter of agreement to the Union to modify the CBA. The IBT put it to a vote of the United membership as required by the IBT Constitution. This is the process United and the IBT were required to follow to make any changes to the United Technicians CBA. *(Exhibit #15 Changes to CBA per IBT Constitution Past Practice at United)*

61. In 2021 the IBT Airline Division and United union reps allowed for the implementation of the unreasonable religious accommodation process which discriminated against those technicians with religious exemptions more severely than those who sought Medical Exemptions or who voluntarily took the experimental vaccines.

62. In August of 2021, the IBT Airline Division rep Vinnie Graziano encouraged United Technicians to take the experimental vaccines. He then stated based on a legal opinion from the IBT Airline Division "their analysis has concluded that any such lawsuit has very little chance of success." *(Exhibit #16 2021-8-25 IBT AD United letter on Vaccine Mandate)*

63. The IBT Airline Division never provided this legal opinion to United Technicians. IBT Intl Headquarters 2021 LM2 shows the IBT paid the law firm Guerrier, Bartos & Roma P.C. over $100,000.00 dollars in United union members' dues money for this United COVID Accommodations legal opinion.

64. The IBT UPS Local 2727 President Tim Boyle completely disagreed with this legal opinion pushed on United Technicians by IBT AD rep Vinnie Graziano and the IBT Airline Division. The UPS union rep stated like most other RLA airline unions that there could be no changes unless there were negotiations and a letter of agreement.

65. No other Union at any other airline allowed their aircraft mechanics to be discriminated against and effectively terminated for requesting a company religious accommodation. In fact, all other unions protected their RLA rights and ensured that those seeking a religious exemption were treated equally.

14

66. The Aircraft Mechanics Fraternal Association (AMFA) reps at Alaska Airlines gave notice to the company that in no uncertain terms any changes to the CBA were required to be negotiated under the protections of the RLA.

67. AMFA Alaska union reps put the company on notice of the RLA requirements and the EEOC requirements against religious discrimination in a four-page memo to the company. No Alaska technicians were terminated or discriminated against. *(Exhibit #17 AMFA Alaska Airlines letter of notice for changes under the RLA)*

68. On November 4th, 2021, one day before the Plaintiff was terminated AMFA Southwest mechanics negotiated equal treatment for all aircraft technicians including those who requested religious exemptions.

69. The Southwest Technicians with religious beliefs were provided the same pay based on the Vaccine Participation Pay Program (VPPP). No one was discriminated against or treated unequally because of their religious beliefs. *(Exhibit #18 AMFA SWA Negotiates Equal Pay for All Techs)*

70. No Aircraft Technicians at Southwest, Alaska Airlines, or Horizon Airlines were terminated or harassed like technicians at United Airlines. The Discrimination and Retaliation against mechanics did not occur at AMFA represented carriers. All technicians were informed of their religious rights under Title VII by AMFA and protected. *(Exhibit #19 AMFA Technicians Vaccine Mandate Information)*

71. The Teamsters union at United Airlines under the leadership of IBT Airline Division reps Vinnie Graziano, Clacy Griswold, Bobby Fisher have an established pattern of not enforcing the United Technicians CBA concerning wages, pension rights, annual audits of pension contributions and audits of outsourcing aircraft maintenance work.

72. In this case the Defendant Union refused to enforce the longstanding Railway Labor Act (RLA) provisions against unilateral changes in the employees' terms and conditions of employment found in §152 Seventh of the RLA. All other

airline technician unions including the IBT UPS Local 2727 recognized this requirement in the Railway Labor Act (RLA) and defended their mechanics CBA rights.

73. The Technicians at United represented by the IBT AD reps Vinnie Graziano, Bobby Fisher and Clacy Griswold were the only technicians in the industry who were forced to sign a letter for a Religious Reasonable Accommodation Procedure that forced them to sign away their contractual rights and agree to an involuntary separation. This was coercion endorsed by the IBT union.

74. United Technicians who had their religious exemptions denied because they did not comply with 3-day limit to respond to an email and provide an additional verification statement from another person were fired over the United vaccine policy.

75. The Defendants refused to enforce the CBA provisions against religious discrimination or the clear and unambiguous for the right to use Sick Leave during an epidemic.

76. The defendant union never answered the Plaintiffs grievance for Sick time use during an epidemic that would have helped hundreds of United Technicians who had religious RAPs and would face loss of wages and benefits when the company placed them on unpaid leave.

**The Teamsters Union Denial of Railway Labor Statutory Rights**

**in The Grievance Procedure**

77. The Teamsters union at United has developed a pattern of denying United technicians their right to a fair impartial hearing and misrepresenting their statutory rights under the RLA. Whether the minor dispute is a matter of contract interpretation or termination of employment, United mechanics have been misled or denied their rights by United IBT union representatives.

16

78. In the case before the court today the union closed an epidemic sick leave grievance by the plaintiff without providing an answer to the grievant, stating it was premature. The union then denied the Plaintiff his request for a stenographer to document the hearing of the facts to prepare for further defense of his religious rights in arbitration. The union also allowed the System Board of Adjustment to be chaired by union officers who had a documented history of bias against the Plaintiff.

79. The union failed to provide an interpretation of the Plaintiff's original grievance to use Sick leave during an epidemic or advocate that it was religious discrimination to treat those who sought a religious exemption any differently than any other mechanic who worked at United Airlines.

80. As shown in the examples above, every other union that represented aircraft mechanics protected their religious rights and fought any harassment and discrimination of their union membership.

81. United Technicians who sought religious exemptions were to be paid less, entitled to less benefits and scrutinized more under the RAP process the Teamsters allowed United to use to terminate technicians. The union denied the plaintiff his statutory right to a fair and impartial arbitration hearing with a neutral arbitrator provided for under the RLA.

82. These appointed union officers acted in an arbitrary and discriminatory manner against the plaintiff and sided with the company that had given the Teamsters union millions of dollars in payments in cash and other things of value, while they ignored the CBA and statutory rights of its union membership.

### Union Misrepresentation of RLA Grievance Rights

83. In 2021 IBT AD rep Clacy Griswold stated to grievants that they have no right to settle grievances only the union does. He stated this in a text to United Geoff Wik in 2021 attempting to dissuade him from pursuing his grievance by providing knowingly false interpretation of the RLA to the grievant. *(Exhibit #20 IBT AD Clacy Griswold RLA misrepresentation)*

84. This has been a pattern of misrepresentation promoted by the Teamsters union at United for years. The right for the employee to settle his own grievance was clearly stated by the Supreme Court in Elgin v Burley 1945. The union cannot settle the grievance without the consent of the grievant.

85. IBT SFO/LAX Business Agent Mark DesAngles also stated to Geoff Wik, he had no right to even file a grievance over contract interpretations only the union does. This same misleading and false statement was given in a legal opinion by an IBT staff attorney to deny other grievances which shows a pattern of denying grievances based on flawed legal opinions was a long-established pattern. *(Exhibit #21 Geoff Wik Misrepresentation and IBT Threats)*

86. This pattern of behavior by the Teamster at United has a long history and too many United Technicians have been terminated and told they had no statutory right to appeal like the Plaintiff and lost their careers at United since the Teamsters became the bargaining agent in 2008.

87. The Plaintiff seeks to restore these statutory rights for himself and all United Technicians including those who have been also wrongfully terminated for their religious beliefs and denied these statutory rights under the RLA by the Teamsters union.

88. The Teamsters union has accepted money and other things of value from the company while it denied terminated employees their statutory right to arbitration.

89. The denial of intangible property rights while accepting money or other things of value from the corporation is considered by the Department of Labor (DOL) a union racketeering activity called honest services fraud.

**The Use of IBT Attorneys to Deny United Technicians Their Rights to the RLA Grievance Procedures**

90. IBT AD rep Vinnie Graziano and the teamsters reps at United have also used their staff attorneys to hide behind legal opinions to allow United to implement the most unreasonable and discriminatory religious accommodation process in the industry and then deny any grievances that resulted from those discriminatory practices.

91. In August of 2021 IBT AD rep Vinnie Graziano presented a legal opinion on the United Airlines vaccine policy that was contrary to the RLA §152 Seventh.

92. The Defendant union denied those who were discriminated against and fired for their religious beliefs their statutory rights to arbitration under the RLA to have a fair hearing with a neutral arbitrator and the professional legal counsel of their choice. This right was affirmed by the Supreme Court in Landers v. National Railroad Passenger Corp. (US 1988)

**This Teamsters pattern of using legal opinions to deny grievances**

93. In 2016 Vinnie Graziano and the United Teamsters union negotiators sold another concessionary agreement to the membership based on false claims of transparency of wages, the calculation of those wages and the security of that formula at the National Mediation Board (NMB).

94. In 2018 when United mechanics filed grievances over their new wage schedule and the secret formula that was used to determine it, the IBT used the same pattern it used in the 2021 IBT vaccine mandate. The union used a legal opinion to deny the wage grievances.

95. In 2020 IBT Staff Attorney Diedre Hamilton provided an interpretation of the contract that was in clear opposition to the originally negotiated language, history and public statements made by union reps for years afterward including Mr. Graziano himself. *(Exhibit #22 IBT AD Staff Attorney Diedre Holland legal opinion to deny wage grievances.)*

19

96. The Teamsters used that flawed legal opinion to also deny United technicians their RLA rights to move those grievances forward. When a union adopts an illegitimate contract interpretation to deny grievance it is a DFR violation (Stupy v USPS 9th Cir 1991)

97. IBT Staff Attorney Diedre Holland was also involved in the Plaintiffs first civil litigation against the Teamsters union concerning the 2018 Industry Reset. *(Seitz v IBT: 20 cv 04452-DMR)*

98. The union legal advisors knew or should have known of the statements and representations made by IBT union negotiators and the Airline Division in 2016 and after years of public statements by the negotiators themselves.

99. To adopt a completely different interpretation 4 years later is an unsustainable argument considering the FOIA evidence of fraud committed by the negotiators claiming that the Cost Model calculation was held securely at the NMB for over four years.

100. There is now a federal complaint against the Teamsters concerning the 2020 hourly wages before the Ninth District Court of Appeals by the Plaintiff

**Pension Rights another example of IBT legal opinion abuse**

101. Prior to Teamsters representation the Plaintiff was the AMFA United Airlines Contract Administrator and Chairman of the 2005-2009 United Technicians Contract negotiating committee who was involved in the negotiation of the Pension language and other critical language the United Technicians contract the Teamsters failed to enforce. The Plaintiff can testify that Ed Gleason's opinion memo used to deny the Pension Rights grievances is factually and historically incorrect.

102. In April of 2017 IBT Staff attorney Ed Gleason drafted a 20-page interpretation of AMFA United contract language to deny Technicians their statutory right to a hearing and arbitration over their right to vote on increased

20

Pension Benefits.
*(Exhibit #23 Ed Gleason Memo to deny pension grievances)*

103. Ed Gleason then presented several fraudulent interpretations of LOA 05-03M of the LOA that was negotiated and signed by the Plaintiff.

104. The Teamsters union illegally removed the Plaintiff's name from that LOA to conceal the IBT unions new fraudulent interpretation. The Plaintiff's name had been completely removed from the entire contract by the IBT Airline Division and its negotiators.

105. In March of 2017 IBT Staff Attorney Nick Manicone agreed with Ed Gleason's illegitimate interpretation of the LOA.
*(Exhibit #23 Nick Manicone backs fraudulent Gleason Memo)*

106. When a union through its attorneys adopts a knowingly false interpretation of the contract to deny a grievance it is considered a DFR violation.

107. In August of 2017 IBT Staff Attorney Nick Manicone denied SFO United Technicians their statutory right to move their grievance forward to arbitration stating that they had no right under the RLA to file or pursue contract interpretation grievances without the Union. This is a false statement.
*(Exhibit #26 2017-8-9 Exhibit #25 2017-8-9 Nick Manicone provides fraudulent RLA interpretation of individual grievance rights.)*

### *RLA Statutory Grievance rights denied again.*

1. The IBT union staff attorney Manicone made a deliberate misrepresentation of the RLA grievance procedures to deny the grievances. This is exactly the pattern they are following today in 2023 to deny religious discrimination grievances.

2. The United Technicians have an ongoing federal complaint against the Teamsters and United Airlines for Pension Benefits and Profit Sharing.

21

That Pension and Profit-Sharing case is now before the Ninth Circuit Court of Appeals. *Case No. 22-16280 (Bybee v Intl Brotherhood of Teamsters)*

3. There is also another federal court case against United Airlines for violations of Kincare laws *Case No. 3:21-CV-09561 (Scholz v United Airlines)*

## Teamsters Presenting Knowingly False Information
## to Ratify Concessionary Agreements

4. The Teamsters Union leadership at United Airlines has been repeatedly caught presenting false statements to the United Technicians to sell concessionary Tentative Agreements in 2011 and 2016. During both negotiations the Chairmen of the committees were Clacy Griswold rep Bobby Fisher. These IBT reps repeatedly asserted false statements concerning the National Mediation Board (NMB) to induce ratification.

5. In 2011 Clacy Griswold and Bobby Fisher and their legal counsel Ed Gleason made false statements to the United technicians about the mediators at the National Mediation Board. (NMB) These statements were then used as threats attributed to members of the mediation board to secure a ratification so the union could take over the United Technicians medical benefits.

6. In 2011 United mechanic Joe Prisco initiated an inquiry to AMFA legal after IBT Tentative Agreement informational meetings in SFO. The Plaintiff also attended these meetings and can confirm many of the false statements made by the IBT union negotiating committee members and Clacy Griswold. These false statements were confirmed by a letter from the NMB to the United Technicians former AMFA legal counsel. (*Exhibit #26 2011 Letter to NMB on IBT Roadshow statements*)

### The pattern of Teamsters deception repeats in 2016

22

7. In 2016 IBT AD rep Vinnie Graziano also made knowingly false statements during the ratification process to sell a concessionary contract to United Technicians.

8. In 2016 IBT rep Vinnie Graziano and the Teamsters negotiators led by Clacy Griswold and Bobby Fisher stated that the NMB would securely hold the Industry Reset Wage Cost Model on the servers at the NMB. This Cost Model would then be presented to the membership at every reset to review the accuracy of the calculation that determined their wages.

9. Vinnie Graziano and the IBT negotiators were caught making knowingly false statements to secure ratification of the 2016 tentative agreement which is a DFR violation.

10. In 2021 a Freedom of Information Act (FOIA) request revealed that IBT Airline Division rep Vinnie Graziano and the union negotiators had lied to United Technicians during the ratification process and perpetuated that lie for over 5 years until it was revealed by the Plaintiff in 2021 in an ongoing court case Seitz vs IBT (No. 22-15902) that is at the 9th Circuit Court of Appeals. *(Exhibit #27 2021 NMB FOIA Request for UAL Cost Model)*

11. This is an act defined under RICO as honest services fraud. When a person who is in an elected or trusted union position of authority intentionally makes fraudulent statements to their membership. This established pattern of fraud is also considered Labor Union Racketeering by the OIG Department of Labor a RICO violation pattern of activity.

### Illegal Alteration of Collective Bargaining Agreement and Payroll Records by United Airlines and the Teamsters

12. As stated earlier during the 2013-2016 negotiations the Plaintiffs name was entirely removed from the CBA. The Plaintiff believes this was done to remove any history that could show the Teamsters failed to properly enforce the United

Technicians CBA from 2008-2016. The Plaintiff was the signatory and chairman of the 2005-2009 AMFA CBA and the Letters of Agreement the IBT did not enforce from 2008 to 2016.

13. The historical company payroll records of all sub United Technicians were also altered during this time by the company and the union. The company removed the historical payroll information that showed United Technicians received a 40% raise in 2002 after 6 years of concessions. This made United Technicians the highest paid in the industry with AMFA in 2008.

14. The Company erased the 40% raise in the mechanics pay history and replaced it with a 6% raise during negotiations so the United Technicians would not be aware of their historical gains and ask for the same consideration during the IBT negotiations including full retroactive pay. When you negotiate a pay raise from $25 to $35 dollars an hour it's a 40% increase not 6% as company records now show.

15. Today United Technicians are among the lowest paid with the lowest starting wages and longest wage progression in the industry after two concessionary contracts that the teamsters negotiated and made significantly false statements concerning the National Mediation Board (NMB) to coerce United Technicians into ratification.

### United Airlines and the Teamsters union were both under Department of Justice Consent Decrees

16. In 2016 United Airlines was forced to sign a Department of Justice Non-Prosecution Agreement for senior executives offering bribes and other things of value to secure New Jersey Port Authority grants for construction projects at the EWR airport. United was forced to pay a $2 million dollar fine.        (*Exhibit #28 2016 United-DOJ Bribery Consent Decree)*

17. In 2015 the International Brotherhood of Teamsters was also under a DOJ consent decree for Labor Racketeering.  The 1989-2015 DOJ consent decree would continue for another 5 years until 2020.
*(Exhibit #29 2015 Teamsters Racketeering DOJ Consent Decree)*

24

18. United Airlines provided money and other things of value to the Teamsters union and the IBT did not enforce the United Technicians CBA or enforce the statutory RLA employee rights in the grievance procedure as cited in the Plaintiff's case.

## Teamsters Airline Division Receiving Money and other Things of Value to not enforce the CBA or the Statutory Right to the RLA Grievance Procedure

19. The Teamsters Union at United has received millions of dollars in the form of cash and other things of value while it ignored contract language and failed to enforce the terms of the United Technicians CBA including their statutory rights to the arbitration provisions in the RLA. This is bribery and labor union racketeering as defined by the OIG DOL.
(*Exhibit #19 IBT LM2 2017-6-6 United Corp. CBA Payment*)

20. During the 2015-2016 negotiations in another attempt to gain control of the United and Continental Technicians Medical Benefits, United Airlines provided the Teamsters Central States Pension Plan Administrators Mike Mullane and Albert E. Nelson unlimited access to company property including thousands of maintenance manpower hours on company property to sell and promote their much more expensive Medical Plan "Teamcare" to United technicians.

21. The more expensive union health plan option was not in the United Technicians' best interest. It was in the best interests of the union and the company to push off the costs of medical benefits to the union. The Union put the more expensive Teamcare into the new tentative agreement as a mandatory medical plan for all United Technicians. The United Technicians did not want Teamcare, and this was clearly demonstrated when the United Technicians voted the Tentative Agreement down by 93%.

22. The United IBT Airline Division union representatives have signed Letters of Agreement surrendering other rights without the consent of the United

25

Technicians in violation of past practice at United Airlines and the IBT Constitution.

23. The Defendant unions failure to enforce the protections against religious discrimination in the United technician CBA is only the latest violation and part of a long-established pattern.

## Union Retaliation Against the Plaintiff

24. The termination of the Plaintiff for his religious beliefs for failing to provide an additional third-party letter within 3 days, and the unions failure to honor his statutory right to proceed to arbitration are just the latest in a long series of actions and retaliations including slander distributed by the union against the Plaintiff for standing against the Teamsters violations of the CBA at United Airlines.

25. In 2013 Local 986 brought the Plaintiff up and charges and made him a member in bad standing unless he paid a fine levied by the union. The union then prevented him from voting on any future contracts, even though he continued to pay full dues to the union.

26. The Plaintiff has filed two separate federal cases against the teamsters because they failed to answer grievances and allow them to move forward. The 2020 Industry Reset Calculation dispute as mentioned before is currently also at the Ninth Circuit Court of Appeals. Case No. 22-15902.

27. The Teamsters union also uses the RLA grievance system to punish mechanics who advocate for the rights of the membership. When IBT appointed reps are voted out of office by the membership and replaced, many of these newly elected reps who try to enforce the contract find themselves held out of service for alleged CBA violations, sometimes for years.

28. There are many examples of union/company retaliation and denial of the RLA grievance process at United Airlines under Defendant unions representation. Many United technicians have been terminated and then denied a fair and impartial hearing, and their statutory rights under the RLA for arbitration.

29. Technicians at United are effectively silenced, intimidated and afraid to speak out against company CBA violations for fear of being targeted and then terminated. When they are terminated, they will have no avenue of recourse unless they use the federal court system.

## Labor Union Racketeering

30. Labor corruption is the misuse of union office and authority for unlawful personal gain.  Labor racketeering is labor corruption committed by, in alliance with, or under the auspices of organized crime groups.

31. The types of crimes include extortion of employers by threatening unlawful strikes, work stoppages, picketing and workplace sabotage: *and soliciting and receiving bribes from employers in exchange for allowing the employer to ignore the terms of the collective bargaining agreement.*

32. From 2011 to 2016 during United negotiations IBT Airline Division reps Clacy Griswold and IBT Airline Division rep Bobby Fisher were identified as the lead negotiators for United Technicians. From 2017 to present the IBT Airline Division identified Vinnie Graziano as a coordinator for the United mechanics and related.

33. In 2015 to 2016 the Teamsters union was provided use of company property and company time to sell and promote their Teamsters Pensions and Healthcare plan Teamcare which amounted to millions of dollars in manpower given by United Airlines to the Teamsters union.

34. *This was a thing of value received by the Teamsters union in violation of the RLA Section 152 Fourth.* The Defendant Union was provided the use of company manpower time and property to promote the Defendant unions pensions and healthcare plans. This is a violation of the RLA §152 Fourth and this is also considered a bribe under RICO.

27

35. In 2017 the IBT International accepted a $1.5 million dollar payment from United Airlines following a 6-year concessionary agreement that was sold to the membership based on false claims of transparency of wages, the calculation of those wages and the security of that formula at the National Mediation Board (NMB) Under the RLA §152 Fourth this is prohibited. *This also is considered Labor Racketeering and a bribe under RICO.*

36. Based on the information and belief, the Teamsters traded contract language, i.e. scope protections, outsourcing protections, audits, and cross utilization ability for control of pension and healthcare benefits for the combined mechanic group, *inter alia* the Teamsters failed to honestly enforce the terms of the negotiated CBA of United Technicians from 2008 to 2021.

37. Based on the information and belief, the Teamsters union violated the United Technicians statutory rights to a fair and impartial grievance procedure and used it attorneys to provide fraudulent legal opinions or advice to deny their statutory rights outlined by Congress in the RLA §151 et seq.

38. Based on the information and belief the Teamsters union targeted for removal those United technicians elected to union positions and other technicians like the Plaintiff who sought to enforce the United Technicians Collective Bargaining Agreement. (CBA)

39. Based on the information and belief the Teamsters union, accepted money and other things of value from the company, interfered, threatened and violated the United Technicians statutory rights to organize and select the union representation of their choice in violation of RLA § 152 Fourth.

## COUNT I
### Violation of Title VII 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination – failure to accommodate.

40. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

41. Plaintiff holds sincere religious beliefs that precluded him from receiving a COVID-19 Vaccine and informed United Airlines of those beliefs and requested religious accommodations from the company vaccine mandate. United Refused to honor the Plaintiffs religious accommodation request.

42. The Union failed to enforce Article 1 of the United Airlines which prohibits discrimination and retaliation for religious beliefs.

43. The Union Defendants then denied the Plaintiff's statutory RLA right to arbitration for violating a Company policy that is not in the CBA.

44. The Union Defendants acted in contravention of the CBA and the RLA and allowed United to institute unreasonable RAP procedures that discriminated against those employees with religious beliefs more than any other class.

## COUNT II
### Violation of Title 42 U.S.C. §2000e *et seq.*
### Religious Discrimination – retaliation.

45. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

46. Plaintiff engaged in protected activity when he requested a religious accommodation from United's Vaccine Mandate.

47. United's mandate harmed those seeking religious accommodation the most with the strictest and unreasonable 3-day compliance timeline and the required forfeiture of employment, wages benefits and seniority.

48. The Union defendants failed to enforce Article 1 of the CBA to protect employees from discrimination and retaliation for their religious beliefs. The Union then allowed the company to implement a RAP policy that effectively terminated their employment in violation of the RLA.

49. The IBT Airline Division Union defendants at United and only at United Airlines allowed for the termination of aircraft technicians who sought a religious exemption.

50. The IBT Airline Division then arbitrarily without notice to the terminated United technicians, pulled the EEOC complaint it had filed on their behalf leaving without a remedy.

## COUNT III

29

## Breach of the Duty of Fair Representation

51. Plaintiff realleges and incorporate by reference paragraphs above as if fully set forth herein.

52. Plaintiff asserts herein a claim against the International Brotherhood of Teamsters (IBT) and IBT Local 986 for the breach of their duty of fair representation to Plaintiff under the Railway Labor Act 45 U.S.C. §151 *et seq.* Under this Act, the IBT Intl. and IBT Local 986, as the exclusive bargaining agents of the United Airlines Mechanics Class and Craft, owe a duty.

53. A union breaches its duty of fair representation when its actions are arbitrary, discriminatory or in bad faith. *Martin v. American Airlines, Inc., 390 F. 3d 601, 606 (8th Cir. 2004)*

54. Defendants' collusion with Plaintiff's employer, United Airlines, and their refusal to pursue or allow the plaintiff to pursue on his own, a meritorious grievance against the new vaccine policy were in violation of their duty of fair representation, because their conduct was in bad faith, arbitrary and discriminatory.

55. A union acts in bad faith where it acts or fails to act due to an improper motive, Neal v Newspaper Holdings, Inc., 349 F 3d 363, 369 (7th Cir. 2003) Defendants colluded with United to implement the vaccine mandate, refused to challenge the mandate and refused to allow technicians who were terminated as a result of the mandate to access the higher stages of the RLA grievance procedures.

56. Pursuant to 45 U.S.C. § 156, Defendants and United were required to provide notice of an "intended change in the agreements affecting rates of pay, rules, or working conditions."

57. Pursuant to 45 U.S.C. § 152 Seventh, United was not allowed to make changes to wages, rules, or working conditions outside of the § 156 procedures.

58. When United Airlines unilaterally mandated the vaccine, Defendants had a duty to object, just like the UPS IBT Local 2727 aircraft technicians President did to the implementation of the requirement on the basis that United changed the rates of pay and working conditions for unvaccinated technicians effectively requiring them to sign over all of their contractual rights by agreeing to the discriminatory religious RAP procedures.

59. Defendants were improperly motivated by the desire to represent the interests of United as opposed to their own members to whom they had the legal duty to fairly represent.

60. Arbitrary conduct is defined as conduct that is "so far outside a wide range of reasonableness as to be irrational. Air Line Pilots Association v O'Neill 499 U.S. 65, 67 (1991) The union ignored clear and unambiguous language that provided Sick Leave in an epidemic for those seeking a religious accommodation when it had previously provided these same sick benefits to healthy United technicians months earlier.

61. Defendants failure to follow its own IBT Constitution for the ratification of changes in the CBA, while other IBT Locals like UPS Local 2727 who represented aircraft technicians clearly stated that there could be no changes under the RLA without a letter of agreement.

62. To breach the duty of fair representation, discriminatory conduct must be "intentional, severe and unrelated to legitimate union objectives. (Amalgamated Assn of Street, Elec. Ry & Motor Coach Emps. Of America v Lockridge 403 U.S. 274, 301 (1971)

63. United created three classes of technicians, those who sought a religious exemption were persecuted the most with a 3 day required response time and requirement for more than one verification, those with religious exemptions were then denied the right to use epidemic sick leave like other technicians had prior to their separation from the company.

64. The Defendants conduct in ignoring the CBA and RLA colluded with United by refusing to oppose United's three class system of technicians, their actions were intentional severe and unrelated to any legitimate union objectives.

65. Plaintiff as a direct result of the Defendants bad faith, arbitrary, and discriminatory conduct in their failure to adhere to their duty of fair representation to the Plaintiff, have been deprived of employment wages and benefits.

## COUNT IV

### U.S.C.45 §151et seq

### Violation Of the Statutory Right to Arbitration

31

**Under the Railway Labor Act**

66. The Defendant union denied the Plaintiff to a fair equitable hearing, denying the use of a stenographic reporter to prepare for future hearings or litigation, the SBA board members had made many documented and public statements against the plaintiff, and the SBA hearing board had no neutral arbitrator. *Santiago v. United Air Lines, Inc. (N.D. Ill. 2013) (Does the RLA give individual airline employees a statutory right to arbitration before an adjustment board? The answer is "yes," and so any provisions in the CBA purporting to subject that right to the AFA's approval are invalid and unenforceable.*

67. Elgin Joliet & Eastern Railway Co. v. Burley et al., 325 U.S. 711, 733 (1945) (individual employee's rights are statutory rights, which he may exercise independent of the union).

68. Plaintiff has sustained irreparable injury being denied access to a stenographer and access to an arbitration decided by a single neutral arbitrator presiding over the parties' System Board of Adjustment (even with non-voting partisan members seated) because there is no other forum that can vindicate his contractual rights.

69. This leaves the only alternative, a federal court to vindicate his statutory rights. *Independent Ass'n of Continental Pilots v. Continental Airlines, 155 F.3d 685, 692 (3rd Cir. 1998)*

## Count V

## Violation of Railway Labor Act §152 Fourth

Fourth. Organization and collective bargaining, freedom from interference by carrier, assistance in organizing or maintaining organization by carrier forbidden; deduction of dues from wages forbidden.

70. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

71. The defendant union received money and other things of value from the company both during and after the negotiations of concessionary contracts in violation of the RLA.

72. The defendant union ignored and did not enforce certain provisions of the United technicians CBA and the RLA and received money from the employer.

32

## Count VI
### The denial of intangible rights
### Contractual rights and RLA Statutory rights

73. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

74. In 2021 the IBT Airline Division denied the Plaintiff and all United Technicians their right to use the clear and unambiguous language in the contract to use Sick Leave during a pandemic. The union refused to provide an interpretation of the minor dispute.

75. The IBT Airline Division failed to enforce the CBA protections against Religious Discrimination in the workplace.

76. The Defendant Union then denied the Plaintiff and other United Technicians the right to proceed to arbitration to a fair and impartial hearing, with a neutral arbitrator and the counsel of his choice. These are the statutory rights in the RLA.

77. The Plaintiff has shown an established pattern of these same Teamsters Airline Division (AD) union reps at United Airlines refusing to answer grievances or provide interpretations and the close meritorious grievances.

78. The Plaintiff has shown a pattern of IBT AD reps and their negotiators, making false statements including to ratify contracts over a 10-year period and the use of illegitimate legal opinions to deny grievances over clear contract violations concerning Pensions and Industry Reset wage calculations.

79. When the grievants like the Plaintiff try to move their grievances forward for an interpretation or to exercise their statutory rights when they are terminated, they are denied by the union in violation of the RLA and well-established case law that support those rights.

80. During the 2011 Contract ratification vote IBT Airline Division reps Clacy Griswold and Bob Fisher made knowingly false statements about the NMB to coerce and threaten United Technicians into the ratification of a concessionary agreement. This is honest services fraud 18 U.S. Code § 1346.

33

81. During the 2016 Contract ratification vote IBT Airline Division reps. Clacy Griswold, Bobby Fisher and Vinnie Graziano made knowingly false claims of transparency of wages, the calculation of those wages and the security of that formula at the National Mediation Board during the ratification process. This is honest services fraud a violation of 18 U.S. Code § 1346.

82. During the 2015-2016 Contract ratification process the IBT was allowed on company property during the working hours of technicians to promote and sell a more expensive and mandatory union sponsored healthcare plan Teamcare to United Technicians who clearly did not want the more expensive union mandated plan. This is considered a thing of value and a violation of the RLA Section 152 Fourth. This is also considered a bribe under RICO laws.

83. Following the 2016 Contract negotiations led by IBT AD reps Clacy Griswold and IBT AD rep Bobby Fisher and IBT AD rep Vinnie Graziano the Teamsters Intl Union received an undisclosed $1.5 million dollar payment from United Airlines. This is also a violation of the RLA Section 152 Fourth. This is also considered a bribe and follows an established pattern defined under RICO laws.

## COUNT VII

### Labor Official Request or Receipt of Prohibited Payments

### Honest Services Fraud

84. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

85. From at least in or about July of 2008 through 2020, CLACY GRISWOLD the Count VII defendant, and officer of labor organization ("the Union") did unlawfully and willfully received and accepted for the labor organization money or a thing of value exceeding $1,000 from an employer whose employees were employed in an industry affecting commerce and whose employees such labor organization represented.

86. United Airlines is an enterprise engaged in and whose activities affect interstate commerce. Clacy Griswold was a union representative of the employees of United Airlines.

87. Clacy Griswold agreed to and did conduct and participate in the course of his duties representing the employees of United Airlines through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding the Plaintiff and other employees.

88. In or around July 2008 arbitrarily cancelled or caused to be cancelled an existing contract with Moss Adams to perform a series of audits of maintenance outsourcing required by the United Technicians 2005-2009 CBA.

   a. From 2008 to 2011 failed to complete and present annual audits of outsourcing maintenance audits as required by the CBA.

   b. On December 9, 2010, concealed an offer from United Airlines to place United Technicians into the CARP Defined Pension Plan.

   c. From 2008 to 2016 failed to complete and present annual audits of United Technicians 401k 5% True Up calculation as required by the CBA.

   d. On or around April 2011 as Chairman of the United Technicians negotiating committee made fraudulent statements attributed to members of the National Mediation Board (NMB) to coerce United Technicians into the ratification of a new collective bargaining agreement.

   e. In 2011 spent or caused to be spent $265,000.00 dollars of union member dues money for maintenance outsourcing audits that were never completed and presented to the United Technicians as required.

   f. In 2014 received a $141,000.00 payment from the company for outsourcing maintenance audits that were never completed or presented to the United Technician membership as required by the CBA.

   g. On or around January 2016 as Chairman of the United Technicians negotiating committee received from the company access to the property

and United maintenance manpower to promote Teamcare a union healthcare plan.

h. During the 2015-2016 United technicians contract negotiations removed the Plaintiffs name from the Collective Bargaining Agreement.

i. On or around August 2016 as Chairman of the United Technicians negotiating committee during the ratification of a new tentative agreement made fraudulent statements concerning the National Mediation Board (NMB) the security and transparency of the Cost Model that would be used to determine future United technician wage increases.

j. On or around March 2017 using a legal opinion based on a fraudulent legal interpretation and opinion denied United technicians' meritorious grievances on Pension Benefits.

k. On or around June 2017 received from United Airlines a payment of $1.5 million dollars for CBA negotiations.

89. Pursuant to and in furtherance of these fraudulent schemes Defendant committed multiple related acts refusing to enforce required terms of the United Technicians Collective bargaining agreement including the denial of statutory grievance rights while accepting money and other things of value from the corporation.

90. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961 (c) 1962 (c) and Honest Services Fraud 18 U.S.C. §1346.

91. The Count VII Defendant has directly and indirectly conducted and participated in the conduct of the unions affairs through a pattern of racketeering and activity described above in violation of 18 U.S.C. §1962(c) and Honest Services Fraud 18 U.S.C. §1346.

92. As a direct and proximate result of the Count VII Defendants racketeering activities and violations of 18 U.S.C. §1962 (c), 18 U.S.C. §1346 the Plaintiff

36

has been injured in their employment and property in that, Plaintiff has lost or been deprived of contract language, seniority rights, job security, wages, pension benefits and statutory grievance rights under the RLA.

## COUNT VIII

### Labor Official Request or Receipt of Prohibited Payments

### Honest Services Fraud

93. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

94. From at least in or about July of 2011 through 2021 Bobby Fisher the Count VIII defendant, and officer of labor organization ("the Union") did unlawfully and willfully receive and accepted for the labor organization money or a thing of value exceeding $1,000 from an employer whose employees were employed in an industry affecting commerce and whose employees such labor organization represented.

95. United Airlines is an enterprise engaged in and whose activities affect interstate commerce. Bobby Fisher was a union representative of the employees of United Airlines.

96. Bobby Fisher agreed to and did conduct and participate in the course of his duties representing the employees of United Airlines through a pattern of racketeering activity and honest services fraud for the unlawful purpose of intentionally defrauding the Plaintiff and other employees.

   a. On December 9, 2010, concealed an offer from United Airlines to place United Technicians into the CARP Defined Pension Plan.

   b. On or around April 2011 as Co-Chairman of the United Technicians negotiating committee made fraudulent statements attributed to members

37

of the National Mediation Board (NMB) to coerce United Technicians into the ratification of a new collective bargaining agreement.

c. On or around January 2016 as Co-Chairman of the United Technicians negotiating committee received from the company access to the property and United maintenance manpower to promote Teamcare a union healthcare plan.

d. As Co-Chairman during the 2015-2016 United technicians contract negotiations removed the Plaintiffs name from the Collective Bargaining Agreement.

e. On or around August 2016 as Co-Chairman of the United Technicians negotiating committee during the ratification of a new tentative agreement made fraudulent statements concerning the National Mediation Board (NMB) the security and transparency of the Cost Model that would be used to determine future United technician wage increases.

f. On or around March 2017 using a legal opinion based on a fraudulent legal interpretation and opinion denied United technicians' meritorious grievances on Pension Benefits.

g. On or around June 2017 received or caused to be received from United Airlines a payment of $1.5 million dollars for CBA negotiations.

h. On or around January denied the Plaintiff his statutory right to proceed to arbitration over his termination for failure to comply with a company policy that discriminated and retaliated against United Technicians for their religious beliefs.

97. Pursuant to and in furtherance of these fraudulent schemes Defendant committed multiple related acts refusing to enforce required terms of the United Technicians Collective bargaining agreement including the denial of statutory

38

grievance rights while accepting money and other things of value from the corporation.

98. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961 (c) 1962 (c) and Honest Services Fraud §1346.

99. The Count VIII Defendant has directly and indirectly conducted and participated in the conduct of the unions affairs through a pattern of racketeering and activity described above in violation of 18 U.S.C. §1962(c) and §1346.

100.   As a direct and proximate result of the Count VIII Defendants racketeering activities and violations of 18 U.S.C. §1962 (c), §1346 the Plaintiff has been injured in their employment and property in that, Plaintiff has lost his job been deprived of contract language, seniority rights, job security, wages, pension benefits and his statutory grievance rights under the RLA.

## COUNT IX

### Labor Official Request or Receipt of Prohibited Payments

### And Honest Services Fraud

100. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

101. From at least in or about July of 2017 through 2021 Vinnie Graziano the Count IX Defendant, and officer of labor organization ("the Union") did unlawfully and willfully receive and accepted for the labor organization money or a thing of value exceeding $1,000 from an employer whose employees were employed in an industry affecting commerce and whose employees such labor organization represented.

102. United Airlines is an enterprise engaged in and whose activities affect interstate commerce. Vinnie Graziano was a union representative of the employees of United Airlines.

103. Vinnie Graziano agreed to and did conduct and participate in the course of his duties representing the employees of United Airlines through a pattern

39

of racketeering activity and honest services fraud for the unlawful purpose of intentionally defrauding the Plaintiff and other employees.

    a.  As a member of the negotiating committee during the 2015-2016 United technicians contract negotiations removed the Plaintiffs name from the Collective Bargaining Agreement.

    b.  On or around August 2016 as member of the United Technicians negotiating committee during the ratification of a new tentative agreement made fraudulent statements concerning the National Mediation Board (NMB) the security and transparency of the Cost Model that would be used to determine future United technician wage increases.

    c.  On or around June 2017 as a member of the negotiating committee received or caused to be received from United Airlines a payment of $1.5 million dollars for CBA negotiations.

    d.  On or around June 2018 as IBT Airline Division Coordinator made a knowingly false statement to United Technicians concerning the calculation of their wages and the security of the United Technicians Industry Reset Cost Model on the servers of the National Mediation Board (NMB).

    e.  On or around December 2020 made a knowingly false statement concerning the Industry Reset Cost Model in an email to deny United Technicians the right to review the Industry Reset Cost Model calculation and deny United Technicians (including the Plaintiff) the right to grieve the illegal changes in the Industry Reset LOA.

104. Pursuant to and in furtherance of these fraudulent schemes Defendant committed multiple related acts refusing to enforce required terms of the United Technicians Collective bargaining agreement including the denial of

40

statutory grievance rights while accepting money and other things of value from the corporation.

105. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1346, 1961 (c) 1962 (c) and Honest Services fraud U.S.C. 18 § 1346.

106. The Count IX Defendant has directly and indirectly conducted and participated in the conduct of the unions affairs through a pattern of honest services fraud, racketeering and activity described above in violation of 18 U.S.C. § 1346, and 1962(c)

107. As a direct and proximate result of the Count VII Defendants racketeering activities and violations of 18 U.S.C.§1346 and §1962 (c), the Plaintiff has been injured in their employment and property in that, Plaintiff has lost or been deprived of contract language, seniority rights, job security, wages, pension benefits and his statutory grievance rights under the RLA.

WHEREFORE, Plaintiff respectfully requests the Court.

  A. Award Plaintiffs compensatory damages in an amount to be determined.
  B. Grant such further relief as is just and proper under the circumstances.

<u>**REQUEST FOR JURY TRIAL**</u>

Plaintiff hereby demands a jury trial.

April 10, 2023,                                    Respectfully Submitted

                                                            James E Seitz
                                                            Pro Se Plaintiff

41

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Los Angeles District Office**
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 01/10/2023

**To:** Mr. James Seitz
33459 Caliban Drive
FREMONT, CA 94555
Charge No: 480-2022-05184

EEOC Representative and email:    BRANDON MANCIA
Investigator
brandon.mancia@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC is closing this charge because the facts alleged in the charge fail to state a claim under any of the laws enforced by EEOC.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
01/10/2023
Christine Park-Gonzalez
Acting District Director

Exhibit #1 JIm Seitz Request for Religious Accomadation

To United Airlines Human Resources Department:

United Airlines has directed me to get vaccinated with a COVID-19 vaccine, or suffer adverse employment action, up to and including termination.

However, I cannot receive a COVID-19 vaccine because to do so would violate my sincerely held religious beliefs. All the currently available COVID-19 vaccines used cell lines originating from aborted children in their manufacturing or testing.

As a Christian, I believe that life begins at conception and ends at natural death.

The Scriptures reveal that God knows us even before we are conceived. *See* Jeremiah 1:4 – 5 ("The word of the Lord came to me, saying, 'Before I formed you in the womb I knew you, before you were born, I set you apart; I appointed you as a prophet to the nations.'"). And God's creative powers are effectively at work while we are yet in the womb. *See* Psalm 139:13 – 16 ("For you created my inmost being you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; your works are wonderful; I know that full well. My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the earth. Your eyes saw my unformed body; all the days ordained for me were written in your book before one of them came to be.").

The Christian Church has condemned abortion – the killing of human infants while in the womb – from earliest times. The *Didache*, a conduct code of the early Christian community, dated by some as being as early as 70 AD, is in accord with Scripture, stating: "Do not abort a fetus or kill a child that is born." Loeb Edition of the *Apostolic Fathers* (also translated as, "Thou shalt not murder a child by abortion nor kill that which is begotten."). *A Plea for Christians*, written around AD 177 by Athenagoras, stated, "We say that those women who use drugs to bring on abortion commit murder, and will have to give an account to God for the abortion." Tertullian, in his *Apologetical*, written in 197 AD, wrote: "Murder being once for all forbidden, we [Christians] may not destroy even the fetus in the womb, . . ."

Hence it is my sincerely held religious belief that abortion is murder, a violation of one of the Ten Commandments ("You shall not murder." Exodus 20:13), and, for that reason, it would violate my sincerely held religious beliefs to cooperate with or be complicit in abortion in any way.

The COVID-19 vaccines were developed or tested using cell lines that were generated or derived from tissues of aborted fetuses. J&J used an aborted fetal cell line in manufacturing its COVID-19 vaccine, while Moderna and Pfizer used aborted fetal cell lines in testing the efficacy of their vaccines. *See* James Lawler, MD, You

Exhibit #1 JIm Seitz Request for Religious Accomadation

asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells" Nebraska Medicine, August 4, 2021, https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells.

So, it is my sincerely held religious belief that, in being vaccinated with any of the currently available COVID-19 vaccines, I would be cooperating with and complicit in abortion – the ending of an innocent human life – and that such would constitute a sin against God and a violation of His Commandments, for which I would be held morally accountable by God.

For that reason, I am requesting a religious accommodation, under Title VII and any similar state law(s), that will excuse me from having to receive a COVID-19 vaccine, and further request that no adverse employment action be taken against me on account of my religious beliefs.

Thank you for your anticipated consideration.

Sincerely,

James E Seitz

File # 115906

Seniority 11-6-1989

United Technician

Certified Airman

8-31-2021

**Received:**

_____        _____
Name                            Date

Exhibit #2  Sept 2021 FDA CDC VAERS Report

# VAERS COVID Vaccine
# Adverse Event Reports

Reports from the Vaccine Adverse Events Reporting System. Our default data
reflects all VAERS data including the "nondomestic" reports. ❓

All VAERS COVID Reports ⬤▢ US/Territories/Unknown

## 675,591 Reports
## Through September 03, 2021 ❓

| | | |
|---|---|---|
| **14,506**<br>DEATHS | **58,440**<br>HOSPITALIZATIONS | **77,919**<br>URGENT CARE |
| **106,184**<br>DOCTOR OFFICE VISITS | **5,783**<br>ANAPHYLAXIS | **7,911**<br>BELL'S PALSY |

Exhibit #2  Sept 2021 FDA CDC VAERS Report



Exhibit #3 IBT AD EEOC Complaint  9-22-2021

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC  570-2022-00034 | |
| | | and EEOC |

State or local Agency, if any

Received by EEOC
Washington Field Office
Date 09-22-2021

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| International Brotherhood of Teamsters ("IBT"), Airline Division | (202) 624-6848 | N/A |

| Street Address | City, State and ZIP Code |
|---|---|
| 25 Louisiana Avenue, N.W., Washington DC, 20001 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl Area Code) |
|---|---|---|
| United Airlines, Inc. | 70,000+ | |

| Street Address | City, State and ZIP Code |
|---|---|
| 233 S. Wacker Drive, Chicago, IL 60606 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 09/10/2021  Latest Present

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The International Brotherhood of Teamsters ("IBT") is the collective bargaining representative of Airline Technicians and related employees, and Flight Simulator Technicians and related employees, of United Airlines, Inc. ("United") nationwide. United and the IBT are parties to a collective bargaining agreement ("CBA") effective December 5, 2016 and which becomes amendable on December 5, 2022.

This Charge concerns United's placement of certain IBT-represented Technicians on involuntary, indefinite, and unpaid leave.

In August 2021 United announced a Covid-19 vaccination mandate for employees, including IBT-represented Technicians, requiring that they receive their first vaccine shot by September 27, 2021 and be fully vaccinated within five weeks, or face separation from the Company. United provided a process by which Technicians could submit a Reasonable Accommodation Policy ("RAP") request for a religious or medical exemption to the vaccination mandate and established an August 31, 2021 deadline to do so. Numerous Technicians applied for the exemption on either a religious or medical basis. Since about September 10, 2021, United has been notifying Technicians if their exemption applications have been approved or denied. United's communications with Technicians regarding their approval status has included emails and messages on its employee intranet portal "Flying Together."

United, through such communications, has announced that effective October 2, 2021, Technicians approved for a religious or medical exemption will be placed on various forms of involuntary, indefinite, and unpaid leave, and lose a variety of benefits, for up to 12 months. Such Technicians have not sought leave of any kind or any duration and are being placed on involuntary and unpaid leave, with the accompanying loss of other benefits, against their will.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Sep 22, 2021<br>Date<br>Charging Party Signature<br>David Bourne, IBT Airline Division Director | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

Exhibit #3 IBT AD EEOC Complaint  9-22-2021

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☐ EEOC | |

and EEOC

State or local Agency, if any

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet(s)):

Technicians approved for a religious exemption to the vaccination have been informed that they will be placed on involuntary, indefinite, and unpaid personal leave effective October 2, 2021. While on personal leave, Technicians will suffer a loss of wages, cease to accrue vacation and sick leave, be denied use of sick leave or vacation time already earned, be denied a pay out for sick leave already earned if they separate from the Company before being recalled, will cease accruing seniority on the 91st day of personal leave if not yet recalled, will be denied pass travel, will be forbidden to retire from personal leave status, and will have their medical coverage discontinued at the end of the month in which the Technician begins personal leave, among other worsened employment conditions.

As described above, IBT-represented Technicians have been and are being discriminated and retaliated against based on religion in violation of Title VII of Civil Rights Act of 1964 ("CRA").

Technicians approved for a medical exemption to the vaccination have been informed that they will begin using their sick bank leave effective October 2, 2021 and will thereafter transition to involuntary, indefinite, and unpaid Extended Illness ("EIS") leave when their sick bank is exhausted (unless they elect to immediately transition to EIS leave). While on EIS leave, Technicians will suffer a loss of wages, will cease to accrue vacation or sick leave, and will be denied company provided life insurance and a host of other benefits after the end of the calendar month from when leave begins, among other worsened employment conditions.

As described above, IBT-represented Technicians have been and are being discriminated and retaliated against based on disability in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA").

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Sep 22, 2021 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date    Charging Party Signature David Bourne, IBT Airline Division Director | |

Received by EEOC Washington Field Office Date 09-22-2021

## Exhibit #4 Request Sick Leave During a Pandemic



# International Brotherhood of Teamsters

## Information of Complaint or Grievance



Print Form

UNITED

Before using this form, the shop steward and the supervisor shall make an earnest effort to resolve the issue satisfactorily. This form is to be completed by the member and the shop steward. The supervisor shall then have ten(10) days to write a response. The shop steward shall provide a completed copy to the union, the member, and the company.

**Part 1 –** To be completed by shop steward and employee

## Employee information:

Name: Jim Seitz                                    File #: 115906         Station/Dept:SFO /MM

Classification: TECHNICIAN    Class Seniority: 6 NOV 1989   Company Seniority: 6 NOV 1989 Local 986

Shop Steward:ED MATTOS                   Shift Start Time:0845          Days Off:51

Home Phone:_____ Cell Phone:650-787-1110      Work Phone:_____

Home Address: 33459 CALIBAN DRIVE

City: FREMONT                              State:CA            Zip Code:94555

## Nature of Complaint:

Applicable Contract Provision(s):Article 11 Sick Leave but not limited to    Date of Claimed Violation(s): Sept 9 2021

Remedy sought: Pay Sick Leave Benefits per Article 11 Section B Paragraph 1 "Exposure to Contagious Disease"

Supervisor First Contacted:_____ Date of contact:_____

Date of Supervisor's Oral Answer:_____

**Case Facts:** (Give complete details including who, what, where, when and why. Attach all records, forms, letters or papers involved.)

I am being placed on involuntary unpaid leave with a loss of all benefits and reduction of seniority beginning October 2, 2021 because the company believes I am a health and safety risk to other employees. If the company or other agency mandates a vaccine (experimental or not) for continued regular employment because they believe I am a health risk to others. I demand the Company follow the contract and allow me to use my accrued personal sick leave beginning October 3, 2021 until it is exhausted..

Article 11 Section B para 1, "Sick pay may also be utilized when an employees presence would jeopardize the health of others because of exposure to to a contagious disease.

According to the CDC and FDA Vaccine Adverse Events Reporting System (VAERS) as of September 3, 2021 there are over 675,591 adverse events reported including 14,506 reported deaths related to these experimental COVID vaccines. The current running total is more than twice all other VAERS Reported vaccine related deaths in its 30 year reported history ( 6,718 people ) making these company mandated COVID vaccines the deadliest vaccines in VAERS recording history.

## Exhibit #4 Request Sick Leave During a Pandemic

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| _____ | _____ | _____ | _____ |
| Steward's Signature | Date | Member's Signature | Date |

**Part II** – To be completed by Supervisor

**Complaint Information**

Name of Complainant: _____

Date Alleged Violation Occurred: _____

Date Complaint Received:_____

Name of Shop Steward and Date of  Oral Answer: _____  _____

                                                         Shop Steward              Date

**Case Facts:** (Give all relevant facts and highlight important fact differences, if any, from the Union's position.)

_____
_____
_____
_____
_____
_____

**First Step Answer:**

_____
_____
_____
_____
_____
_____
_____

| _____ | _____ | _____ |
| Supervisor's Name | Supervisor's Signature | Date |

## Exhibit #4 Request Sick Leave During a Pandemic

## ARTICLE 11- SICK LEAVE AND OCCUPATIONAL INJURY

A. Sick/Occupational Injury

Sick/occupational injury time is provided to allow the necessary time off to recuperate from illness or injury. An employee on sick or occupational injury leave may not accept employment or receive pay for services from any other organization without prior written approval from the employee's supervisor/manager and Human Resources.

B. Definitions

1. Sick Pay – is pay to an eligible employee who cannot perform his regular duties because of sickness (physical or psychological) or non-occupational injury, including maternity. Sick pay may also be utilized when an employee's presence would jeopardize the health of others because of exposure to a contagious disease. Sick pay does not cover time for routine physical examinations or dental check-ups. Examinations, tests and treatment for specific medical conditions are not considered to be "routine physical examinations." Pay during a period of sick absence will be based on the employee's base rate and scheduled hours.

2. Occupational Injury Pay – is pay to an eligible employee who is unable to work because of an injury on the job at United. The injury must be one that is covered by the applicable state Workers' Compensation law, and must be verified in writing by the treating physician. Pay during a period of occupational injury absence will be based on the employee's base rate of pay and scheduled hours. Pay received from the Company for an occupational injury will be at a rate equal to the employee's base rate of pay times his regularly scheduled hours, reduced by the amount of Worker's Compensation Temporary Disability Pay received by the employee from the Company's insurance carrier, or the state.

3. Worker's Compensation Temporary Disability Pay – is pay to an eligible employee unable to work because of an injury on the job at United.

103                                                    **11-1**

Exhibit #5 Plaintiff's Initial Hearing Statement

In early August United Airlines wanted to implement a mandate that all employees would be required to provide proof of COVID "vaccination" or take an experimental COVID shot or series of shots as a condition of continued employment.

This company mandate to my knowledge was not based on any existing law or OSHA guidelines but enforced voluntarily by United Airlines.

On August 25th United Airlines CEO stated that the FDA had fully approved the Pfizer coronavirus shots for people 16 and older. I have included both letters put out by the FDA covering Pfizer EAU and Comirnaty Pfizer shots. **Exhibit 1 EAU Exhibit 2 Comirnaty**

I filled out a Reasonable Accommodation request on August 31, 2021.**Exhibit 3 RAP Religious Exemption** My objection was based on the ingredients in the shot and the use of aborted fetus cells in the creation of the vaccine. It has been recently learned that Pfizer attempted to hide the use of Human Embryo Kidney cells or HEK 239 cells in the vaccine from the public.

The FDA CDC VAERS Reporting system data shows that these Covid shots are the deadliest shots ever recorded in the VAERS 30-year history. **Exhibit 4 FDA CDC VAERS Report**

I filed a grievance and stated my concerns with the Covid vaccines by providing data from the FDA and CDC in the VAERS Vaccine Adverse Events Reporting System, which showed over 675,000 adverse events including over 14,500 deaths reported as of September 3, 2021. **Exhibit 5 Sick Leave Grievance Exhibit 6 Article 11 Sick Leave**

Those statistics made these Covid Vaccinations that United Airlines was mandating as a condition of employment the deadliest vaccines reported in the FDA/CDC VAERS reporting history. Today based on October 22nd VAERS reporting data those numbers are now over 800,000 adverse events and 17,600 deaths reported.

My RAP request was denied on September 7, because I did not, respond within 3 days of their second request for a note from a third party for my sincerely held religious convictions.  It is absurd to have anyone speak for another person's religious convictions. Our Title VII Rights and protections do not need to be validated by anyone.  To my knowledge all other Religious RAP requests at that time were also denied even after employees provided a secondary note.

I do not believe the FDA newly approved experimental vaccine was available at the time my Reasonable Accommodation was denied.

I would like to know who at United Airlines had the authority and made the decision to deny my RAP? What criteria were used to deny my request?

What qualifications and experience does the individual have, who made the decision to deny my RAP?

How did the Company determine the persons that reviewed the letters were qualified to make decisions about the validity of someone else's personal religious beliefs?

Exhibit #5 Plaintiff's Initial Hearing Statement

I have also spoken to other technicians about the shots, one Technician requested a medical exemption letter from his Kaiser Doctor because he had a leaking heart valve. His doctor denied the request.

I filed a grievance in September stating that the Company should allow United Technicians who chose not to take the Pfizer shots as a condition of employment be allowed to use their sick leave in accordance with Article 11 Section B.

*Sick pay may be utilized when an employee's presence would jeopardize the health of others because of exposure to a contagious disease.*

In 2020 and 2021 United Airlines allowed all technicians who had available sick time to use their sick time even though they were not sick. This was a common practice in SFO IAH ORD and MCO. Technicians who were part of the VSL program were allowed to remain at home and be paid sick time. Every employee who does not want to receive the vaccination should have those same sick time benefits as well.

The Company denied the grievance and a few weeks later the union also denied the grievance stating it was premature. It was not premature the company stated that those who did not take the shot would be put out of work without pay or terminated.

The company's position is in violation of the United Technicians contract and California Labor Code 233. **Exhibit 7 CA 233 Employee right to use Sick Leave.**

The company mandate is a violation of California Health and Safety Code 24172 "Experimental subjects" bill of rights **Exhibit 8 24172 Experimental subjects** and California Health and Safety Code 24173 Informed Consent **Exhibit 9 Informed consent form**

I have also filed a complaint with the EEOC.

The IBT then put out several letters concerning the EEOC and United Airlines changing the terms of our CBA. **Exhibit 10 IBT letter on RAP Exhibit 11 IBT EEOC Complaint Exhibit 12 IBT letter on CBA changes**

The company then instituted an N95 mandatory mask policy for all non-vaccinated workers, even though the CDC and Dr. Fauci have stated that fully vaccinated and vaccinated employees can both transmit the disease, additionally Dr. Fauci admitted that masks are ineffective at stopping a virus.

The first night I wore the N95 mask I experienced a severe headache after only a half an hour wearing the mask. It has been shown that wearing masks reduces the available oxygen for breathing to below the safe OSHA levels with the N95 mask even more so. The IBT put out a letter concerning the OSHA requirements for mask training and use. **Exhibit 13 IBT OSHA Letter**

There are OSHA laws in place that require 19.5 percent oxygen be available for employees. I have attached that letter. From my experience I believe the requirement imposed by United

Exhibit #5 Plaintiff's Initial Hearing Statement

Airlines to wear an N95 mask for over 10 hours while at work creates a dangerous situation for our workers. We are required to taxi aircraft, run engines and work at elevated heights or confined areas when performing flight safety aircraft maintenance. We have been trained by United Airlines to be cautious of low oxygen environments due to a United Technician who died in a poorly ventilated low oxygen work environment.

I have included an OSHA letter concerning low oxygen work environments. I believe the masks we are being mandated to wear for extended periods of time are a danger in our workers. **Exhibit 14 OSHA Requirement for breathing air oxygen 19.5%**

I would like to request that United Airlines and OSHA conduct an oxygen level check on our workers while they are required to wear these masks for up to 10 hours.

It came to my attention through the lawsuit filed on the East Coast that United Airlines was paying their unvaxxed pilots to remain at home because the vaxxed pilots did not want to work in the same cockpit with unvaxxed pilots.

United Airlines technicians work in these exact same cockpits for extended periods of time whether that is performing engine run operations, taxiing operations or daily required RON checks which require 2 or more technicians to be in the cockpit at the same time.

United Airline employees working in the same environments should be treated equally. United Technicians face the same work-related hazards that the United Pilots face but our technicians are forced to surrender their careers if they do not comply with a voluntary company mandate. The company is requiring us, to take an experimental vaccine that is now the deadliest vaccine in the FDA CDC VAERS Reporting system history that has led to the reported deaths of over 18,000 people.

A Harvard study of the VAERS reporting system has shown that only 1% of vaccine adverse events are reported. That means the true fatality rate of the COVID shots could be as high as 1.8 million people. If I am aware of this publicly available information, then United Airlines management should also be aware of the dangers and deadly track record of these shots.

All employees should be treated with the same respect and given the same considerations. If United Airlines is paying its Pilots who choose as their right not to be vaccinated to stay at home and receive pay, then that right should be extended to every other employee in the same situation.

In my nightly duties working as a Line Technician, I am repeatedly required to work around vaccinated Pilots, Flight Attendants and unvaccinated customers who I encounter during the course of my work. Unvaccinated customers can fly on our aircraft, but unvaccinated technicians are not allowed to work on our aircraft. A recent Harvard study has shown that natural immunity conveys much more innate immunity to Covid infection while the vaccine only protects from the original covid strain that is long gone by now.

**Exhibit #5 Plaintiff's Initial Hearing Statement**

There are safe alternatives to the vaccination and the use of Ivermectin has been recently adopted by the FDA as another avenue of prevention and treatment.

There is currently a temporary restraining order (TRO) against United Airlines from terminating employees or denying their right to a religious exemption. See Sambrano et al., v United Airlines Case # 4:21-cv-1074-P. **Exhibit 15 TRO 10/12/2021 Exhibit 16 TRO Extension 10/25/2021**

United Airlines should honor that TRO and provide our technicians who have decided against taking an experimental shot the same rights and benefits given to the United Pilots who work in the same flight decks.

On the night of 10/26/2021 I submitted a Negative Covid test and the secondary letter for my RAP request to Uniteds help hub.

United Airlines should allow unvaxxed technicians the same sick time usage that other United Airlines technicians allowed when they took the VSL prior to separation.

Lastly the Company should follow the Technicians CBA Article 11 B that allows United Airlines technicians the use of their sick time during a pandemic.

The Federal Government suggested this voluntary mandate for US corporations. It is not a law. The federal aid money that is still available can pay for the United Technicians wages while they are held out with pay just like the Pilots at United Airlines.

The actions taken by the Company have placed a burden on my wife who is now suffering from migraine headaches because of the stress induced by the company's termination policy for employees who have not taken the vaccination.

Today there are more people in the hospitals who are fully vaccinated as a percentage than the unvaccinated. This does not take into consideration all the individuals with adverse reactions to the Covid shots.

We have a contract that provides for infectious disease sick leave, we also have an established practice by United Airlines of allowing technicians to use their remaining sick leave before being separated from the company that allows them stay at home even when they are not sick.

For these reasons and many others, I believe United should honor the contract and the individual rights of employees to seek a Medical or Religious exemption.

Respectfully

Jim Seitz 32 Year United Airlines Technician

Certified Airman FCC Licensed Avionics Technician

FAA Licensed Airframe and Powerplant Technician

Exhibit #6 United Vaxx Payment

Flying Together / News ⬈

# Look for award money coming to your paycheck!

November 12, 2021



Exhibit #6 United Vaxx Payment

**Last month Scott announced that all active United employees will receive a special United 100 award payment for their exceptional work during 2020. We also announced that vaccinated employees will receive an additional day of pay. Be on the look out for these special payments!**

**United 100 award for all active employees**

Scott surprised us in October when he said all active employees will receive $1,000 each! "The pandemic tested us all like never before, but your perseverance, commitment and hard work are the things that really helped United emerge on the other side as a better, stronger airline," said Scott. "We appreciate the things you did to support our customers and one another during the crisis and hope you find a way to put this extra cash to good use before the holidays. Thank you once again for showing that we're stronger when we are united."

Employees in the U.S. will receive this special payment on Nov. 19. Payment dates for employees based outside of the U.S. may vary depending on payroll processing. You can learn more about how the award will be distributed to different employee groups here ⬀.

**Additional day of pay for fully vaccinated employees**

Separately, we announced in September that active U.S. employees who have been fully vaccinated and uploaded their COVID-19 vaccination record will receive a one-time goodwill payment in your mid-November paycheck. This payment will be an additional day of pay based on your regular hours worked per day. Some employees will already see this payment on their Nov. 15 paycheck. Applicable local taxes and withholdings will be deducted as required by law. Employees who are not on the U.S. payroll have until Dec. 31, 2021 to complete and upload their vaccination record to be eligible and payment dates vary by country. United pilots and Flight Attendants who have already received union-negotiated compensation for uploading their vaccine records are not eligible to receive the one-time special payment.

For questions related to the one-time special payment, please review this Q&A document ⬀ or contact your local HR manager.

Exhibit #7 2022-1-18 IBT Mark DesAngles denial of Stenographer for hearing

Ok thanks

On Jan 18, 2022, at 10:49 AM, Mark DesAngles
<mdesangles@████████████████████:

Hello Jim,
    The Company has agreed to provide you positive space travel under the
following conditions:
- Provide a negative COVID-19 test taken within the previous 72 hours upon his
  arrival at the MOC
- Wear a KN95 mask the entire time while on property
- Only allowed to be escorted to and from the IBT conference room/office space
- Meet Colin Botto at the security desk upon his arrival for escort

Please contact Colin Botto to make arrangements. As to your other inquiry,
please be advised that stenographers are not allowed at System Board
hearings. Thanks

Regards,

Mark DesAngles
Business Representative
Teamsters Local 986 - SFO

████████████37

1

Exhibit #8 2022-1-7 FDA CDC VAERS Report

# VAERS COVID Vaccine
## Adverse Event Reports

Reports from the Vaccine Adverse Events Reporting System. Our default data
reflects all VAERS data including the "nondomestic" reports. ⊚

All VAERS COVID Reports ⬤ US/Territories/Unknown

### 1,033,992 Reports
### Through January 7, 2022 ⊚

| | | |
|---|---|---|
| **21,745**<br>DEATHS | **115,754**<br>HOSPITALIZATIONS | **112,235**<br>URGENT CARE |
| **161,439**<br>DOCTOR OFFICE VISITS | **8,811**<br>ANAPHYLAXIS | **12,951**<br>BELL'S PALSY |

Exhibit #8 2022-1-7 FDA CDC VAERS Report

| 3,594 | 11,055 | 25,773 | 37,937 |
| Miscarriages | Heart Attacks | Myocarditis/Pericarditis | Permanently Disabled |

| 5,176 | 24,791 | 37,466 | 11,758 |
| Thrombocytopenia/ Low Platelet | Life Threatening | Severe Allergic Reaction | Shingles |



All Deaths Reported to VAERS by Year

21,745 Reported Deaths

Over 1 Million Adverse Event Reports

2020-2022 Compared to ALL Other Vaccines over the last 30 Years

8,858 Deaths VAERS Reported for ALL other Vaccines Over 30 years

Exhibit #9 Life Insurance CEO 2021 40% increase in Deaths

# Indiana life insurance CEO says deaths are up 40% among people ages 18-64

- By Margaret Menge | The Center Square contributor
- Jan 1, 2022

(The Center Square) – The head of Indianapolis-based insurance company OneAmerica said the death rate is up a stunning 40% from pre-pandemic levels among working-age people.

"We are seeing, right now, the highest death rates we have seen in the history of this business – not just at OneAmerica," the company's CEO Scott Davison said during an online news conference this week. "The data is consistent across every player in that business."

OneAmerica is a $100 billion insurance company that has had its headquarters in Indianapolis since 1877. The company has approximately 2,400 employees and sells life insurance, including group life insurance to employers nationwide.

Davison said the increase in deaths represents "huge, huge numbers," and that's it's not elderly people who are dying, but "primarily working-age people 18 to 64" who are the employees of companies that have group life insurance plans through OneAmerica.

"And what we saw just in third quarter, we're seeing it continue into fourth quarter, is that death rates are up 40% over what they were pre-pandemic," he said.

"Just to give you an idea of how bad that is, a three-sigma or a one-in-200-year catastrophe would be 10% increase over pre-pandemic," he said. "So 40% is just unheard of."

Davison was one of several business leaders who spoke during the virtual news conference on Dec. 30 that was organized by the Indiana Chamber of Commerce.

Exhibit #9 Life Insurance CEO 2021 40% increase in Deaths

Most of the claims for deaths being filed are not classified as COVID-19 deaths, Davison said.

"What the data is showing to us is that the deaths that are being reported as COVID deaths greatly understate the actual death losses among working-age people from the pandemic. It may not all be COVID on their death certificate, but deaths are up just huge, huge numbers."

He said at the same time, the company is seeing an "uptick" in disability claims, saying at first it was short-term disability claims, and now the increase is in long-term disability claims.

"For OneAmerica, we expect the costs of this are going to be well over $100 million, and this is our smallest business. So it's having a huge impact on that," he said.

That $100 million is what OneAmerica will have paid out to policyholders in group life insurance and disability claims, the company said.

Davison said the costs will be passed on to employers purchasing group life insurance policies, who will have to pay higher premiums.

The CDC weekly death counts, which reflect the information on death certificates and so have a lag of up to eight weeks or longer, show that for the week ending Nov. 6, there were far fewer deaths from COVID-19 in Indiana compared to a year ago – 195 verses 336 – but more deaths from other causes – 1,350 versus 1,319.

These deaths were for people of all ages, however, while the information referenced by Davison was for working-age people who are employees of businesses with group life insurance policies.

At the same news conference where Davison spoke, Brian Tabor, the president of the Indiana Hospital Association, said that hospitals across the state are being flooded with

Exhibit #9 Life Insurance CEO 2021 40% increase in Deaths

patients "with many different conditions," saying "unfortunately, the average Hoosiers' health has declined during the pandemic."

In a follow-up call, he said he did not have a breakdown showing why so many people in the state are being hospitalized – for what conditions or ailments. But he said the extraordinarily high death rate quoted by Davison matched what hospitals in the state are seeing.

"What it confirmed for me is it bore out what we're seeing on the front end,..." he said.

The number of hospitalizations in the state is now higher than before the COVID-19 vaccine was introduced a year ago, and in fact is higher than it's been in the past five years, Dr. Lindsay Weaver, Indiana's chief medical officer, said at a news conference with Gov. Eric Holcomb on Wednesday.

Just 8.9% of ICU beds are available at hospitals in the state, a low for the year, and lower than at any time during the pandemic. But the majority of ICU beds are not taken up by COVID-19 patients – just 37% are, while 54% of the ICU beds are being occupied by people with other illnesses or conditions.

The state's online dashboard shows that the moving average of daily deaths from COVID-19 is less than half of what it was a year ago. At the pandemic's peak a year ago, 125 people died on one day – on Dec. 29, 2020. In the last three months, the highest number of deaths in one day was 58, on Dec. 13.

Exhibit #10 Plaintiffs SBA Hearing Statement

On November 9th, 2021, I was terminated after 32 years of service at United Airlines because I was accused of violating United Airlines Company policy for mandatory COVID 19 vaccinations. I applied for a religious exemption from the Company vaccine policy and was denied by United Airlines Human Resources. **Exhibit 20a Termination letter.**

Title VII of the Civil Rights Act of 1964 prohibits and makes it unlawful for an employer to discriminate as to hiring, firing, compensation, terms, conditions, or privileges of employment on the basis of race, color, religion, sex, or national origin.

An employer has the obligation to make "reasonable accommodation" to the religious needs of his employees, where such accommodations do not force undue hardship on the employer.

The Supreme Court and EEOC guidance state that a religious objector's mere self-identification as a religious adherent should be given "great weight" and "ordinarily" be accepted with deference. I have filed a complaint with the EEOC and it has been confirmed and accepted, United should have already received their notice from the EEOC.

**On August 25th United Airlines CEO** stated that the FDA had fully approved the Pfizer vaccine, based on my research it is clear that the FDA approved vaccine Comirnaty was not at that time and is still not available in the United States. The only Pfizer vaccine available was the BioeNtech which is still listed today as under by the FDA under an EAU- Emergency Use Authorization.

**On November 11, 2020, a Federal Court Judge** in a case concerning the Department of Defense stated that "The DOD cannot mandate vaccines that only have an EAU" he stated. Although Pfizer's Comirnaty vaccine received FDA approval in August, the vials in circulation are still labeled for Emergency Use Authorization (EAU)…there is no approved COVID-19 vaccine available to the servicemen. **Exhibit 20b 2021-11-12 2021-11-12 WINSOR ORDER John and Jane Doe vs Secretary of DOD**

**Exhibit 21 2021-12-7 Federal Judge Rejects BioNTech and Comirnaty Interchangeability**

**December 15, 2021, Hospitals** in Ohio were still distributing the non-FDA EAU BioeNtech vaccines and when asked multiple times if Comirnaty is in use anywhere, Pfizer did not respond. **Exh 22 2021-12-15 Ohio Hospital Comirnaty Not Available**

**December 23, 2022, the CDC** website stated that Comirnaty products are not orderable at this time. At present, Pfizer does not plan to produce any product with these new NDCs and labels over the next few months. How can United terminate 32-year employees for failing to comply with a Company vaccine mandate when the FDA approved Comirnaty is not available. **Exh 23 2021-12-23 CDC Website Comirnaty Not Available**

**January 3, 2022, the FDA** distributed a letter that clearly states on page 20 that the Pfizer-BioeNtech vaccine was still under the Emergency Use Authorization. **Exh 24 - 2022-1-3 Pfizer LOA Booster expansion 12.30**

**January 7, 2022,** the FDA CDC VAERS Vaccine Adverse Events Reporting System reported over 1 million adverse events associated with the COVID19 vaccines. The reported deaths from the COVID19 vaccines rose from over 14,000 from September 3, 2021, to over 21,000 on January 7, 2022, making these COVID19 vaccines the deadliest vaccines in VAERS reporting history. **Exh 25 - 2022-1-7 OpenVAERS Alert January 2022**

Exhibit #10 Plaintiffs SBA Hearing Statement

January 13, 2022, The Supreme Court of the United States ruled that the OSHA Employees mandate for employers over 100 employees unconstitutional. **Exh 26 - 2022-1-13 Supreme Court Stay on OSHA Vaccine Mandate.**

The Federal Government proponents for the OSHA vaccine mandate claim that 6,500 lives would be lost without the mandate, but insurance actuaries who track deaths as part of insurance plans across America have an even more dire statistic to report.

The head of Indianapolis-based insurance company OneAmerica said the death rate is up a stunning 40% from pre-pandemic levels among working-age people.

"We are seeing, right now, the highest death rates we have seen in the history of this business – not just at OneAmerica," the company's CEO Scott Davison said during an online news conference this week. "The data is consistent across every player in that business." "And what we saw just in third quarter, we're seeing it continue into fourth quarter, is that death rates are up 40% over what they were pre-pandemic," he said. "Just to give you an idea of how bad that is, a three-sigma or a one-in-200-year catastrophe would be 10% increase over pre-pandemic," he said. "So, 40% is just unheard of." Davison was one of several business leaders who spoke during the virtual news conference on Dec. 30 that was organized by the Indiana Chamber of Commerce. Most of the claims for deaths being filed are not classified as COVID-19 deaths, Davison said. **Exh 27 - 2022-1-1 Indiana life insurance CEO says deaths are up 40% among people ages 18-64**

I have tried to comply with United's COVID 19 policies through a religious exemption but was denied. It is clear from my research that the FDA approved Comirnaty that United's Vaccine Mandate policy was built on was not available in August of 2021 and still is not available. The OSHA mandate United Airlines is following has been determined by the Supreme Court to be unconstitutional. The vaccines have dropped from a claimed 90% immunity in June of 2021 to today where the CDC and FDA state they will not stop COVID infection or transmission.

In closing I have worked for United Airlines for over 32 years through the gulf war in 1991 to the Coniston Brothers attempted takeover and ESOP in 1994, through 911 in 2001 and through the bankruptcy in 2005 where we held open negotiations for our technicians. I have never witnessed such a blatant disregard for employee's rights, their contractual rights, personal and religious rights as I have seen over these last 2 years at United Airlines, but I am an optimist so all things can change.

Exhibit #10 Plaintiffs SBA Hearing Statement

I have provided the Company with their required religious exemption letter and secondary letter of affirmation of my religious beliefs in compliance with their policy and deserved to be reinstated and made whole.

Jim Seitz

32 Year United Airlines Technician

FAA Certified Airman



Exhibit #11 IBT Local 986 SBA Denial Letter

# Grievance Closeout Letter

**Grievance Number:**  2021-986-SFO-UA-135

**Employee Name:**  James Seitz

**File Number:**  115906

Dear Mr. Seitz,

Your grievance was heard by the System Board of Adjustment on January 20th, 2022. I am now in receipt of the Board's decision upholding your termination and denying your grievance. Pursuant to Article 19, Section D of the Parties' Collective Bargaining Agreement, decisions made by the System Board of Adjustment are final and binding. Accordingly, your grievance will not be pursued any further.

Fraternally,

*Mark DesAngles*

Mark DesAngles

IBT Business Agent, Local 986

Date: January 27th, 2022

Exhibit #12 Plaintiff Request for RLA Arbitration

February 8 2022
Thomas Reardon
Managing Director, Labor Relations - Ground

Re:  Grievance SFO
2021-986-SFO-UA-135

United Airlines, Inc.
233 S. Wacker Drive
WHQLR 25th Floor
Chicago, Il 60606

Dear Mr. Reardon,

Please be advised that I have filed the above-referenced grievance and did not consent to its withdrawal with or without prejudice.  The IBT made their determination without my knowledge and consent and have stated they will not pursue it any further. I do not agree with the findings of the SBA in the denial of my grievance. I would like United Airlines to honor my statutory right to proceed to an arbitration hearing on the merits of my case without IBT support.

Airline employees have an individual statutory right under the Railway Labor Act to access the grievance and arbitration process mandated by Section 184 of the RLA, with or without the certified union as a party.

*Elgin Joliet & Eastern Railway Co. v. Burley et al.*, 325 U.S. 711, 733 (1945) (individual employee's rights are statutory rights, which he may exercise independent of the union); *Capraro v. UPS Company*, 993 F.2d 328, 336 (3rd Cir. 1993)

("It necessarily follows that an employer and a union, through a negotiated collective bargaining agreement, cannot deprive a category of employees of access to grievance and arbitration process"); *Miklavic v USAir, Inc*, 21 F.3d 551 (3rd Cir 1994)

(concluding that airline employees are entitled to proceed to arbitration on their own behalf); *Kaschak v. Consolidated Rail Corp.*, 707 F.2d 902, 909-910 (6th Cir. 1983)

("The RLA contemplates the presence of three entities: the employer, the individual employee and the union representative of the collective employees. The rights of the individual employee as against the employer are not coextensive with those of the union; each party under the statute maintains a distinct right to enforce the obligations of the other two").

The IBT has no authority to supplant an individual grievant party status. *Stevens v. Teamsters Local 2707*, 504 F. Supp. 332, 336 (W.D. Wash. 1980) (finding that the union's withdrawal of individual grievances was in reckless disregard of the statutory rights of the plaintiffs to pursue their own grievances); *Smyj v. Consolidated Rail Corp.*, 1986 U.S. Dist. LEXIS 29876 (S.D.N.Y. 1986); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1052, n.9 (11th Cir. 1996) ("individual airline employees *are* entitled to convene special boards of adjustment as a matter of statutory right"); *Pratt v. United Air Lines, Inc.*, 468 F. Supp. 508, 513 (N.D. Cal. 1978) (under the RLA, "the Union does not have exclusive control over grievances").

Exhibit #13 United Denial of Statutory Rights

*Via email and USPS*

February 14, 2022

Mr. Jim Seitz
474 E Cedarwood Ct
Mooresville IN 46158

Re:  Grievance 2021-986-SFO-UA-135

Dear Mr. Seitz,

United Airlines is in receipt of your emailed letter received by us on February 11, 2022, in which you assert your right to appeal your termination from United Airlines, in the above referenced grievance, to arbitration. We do not acknowledge such a right in this case.

The IBT did not withdraw your appeal from the process, neither with nor without your consent. A System Board of Adjustment hearing was held on January 20, 2022. A decision was rendered by the Board on January 24, 2022 denying your grievance and upholding your termination. Article 19 Paragraph C.4. of the 2016 – 2022 UA/IBT Technicians Agreement provides in pertinent part, *"The System Board's findings and decisions shall be final and binding upon the Teamsters – Airline Division, the Company, and the individual employee or employees to such dispute"* (emphasis added).

Therefore, according to the terms of your Collective Bargaining Agreement, the matter is closed.

Sincerely,

cc:    Zachery Jones
       Julianne Cooney
       Rodney Luetzen

Exhibit #12 Plaintiff Request for RLA Arbitration

In the *Stevens* decision, the court held:

> before the defendant union might withdraw a grievance without receiving anything for the employee in return, it must give notice to the employee of its intention to do so.

> The union argues that withdrawal of the grievances was not arbitrary because it viewed the grievances as meritless. But plaintiffs' complaint is not that the union improperly viewed the grievances as meritless but rather that the union withdrew the grievances without, according to plaintiffs, their statutory right individually to process those grievances. There has been no reason advanced by the union for its failure to notify plaintiffs prior to the withdrawal of the grievances. The Court concludes that the withdrawal of the grievances without prior notice lacked any rational basis and was arbitrary. Turning to the egregious conduct test, the Court finds that the withdrawal was in reckless disregard of the statutory rights of the plaintiffs to pursue their own grievances, that the foreclosing of the rights of plaintiffs with respect to the grievances severely prejudiced them, and that the policies behind the duty of fair representation would not be harmed by imposing liability in this case.

*Stevens*, 504 F. Supp. at 336 (citations omitted).

Please acknowledge receipt of this letter, and that you will honor my statutory right to proceed to arbitration, at your earliest convenience.

Sincerely,

Jim Seitz

February 8 2022

Exhibit #14 UPS IBT Local 2727 No Harassment over Vaccine

## Vaccination Harassment

Teamsters Local 2727

LOCAL 2727

7711 Beulah Church Road, Louisville, KY 40228

Brothers and Sisters,

The Local received several calls from members today informing us that the Company is harassing members by forcing them into meetings with management and calling them at home and asking them if they've been vaccinated.

After discussing the harassment of our members with Labor VP John Veentjer, the Union has been assured that there is no requirement for LU2727 members to attend any meeting with management and/or answer any questions related to vaccinations. Don't hesitate to contact the Company is harassing members by forcing them into meetings with management and calling them at home and asking them if they've been vaccinated.

After discussing the harassment of our members with Labor VP John Veentjer, the Union has been assured that there is no requirement for LU2727 members to attend any meeting with management and/or answer any questions related to vaccinations. Don't hesitate to contact the Local if you feel threatened in any way.

Fraternally

Tim Boyle

President, Teamsters Local 2727

Exhibit #15 Changes to CBA per IBT Constitution Past Practice at United

# INTERNATIONAL BROTHERHOOD OF TEAMSTERS

**JAMES P. HOFFA**
General President

25 Louisiana Avenue, NW
Washington, DC 20001



**C. THOMAS KEEGEL**
General Secretary-Treasurer

202.624.6800
www.teamster.org

June 30, 2008

Dear UAL Mechanic Teamster:

We are writing to you to urge your support of an amendment to the current contract that will give you a guaranteed wage increase.

United Airlines, Inc. has proposed a Letter of Agreement (LOA) (enclosed) that would amend the current contract by replacing the participation of the Mechanics and Related group in the company's Performance Incentive Program (PIP) with a 1 percent wage increase. The official amendment language follows:

> **As set forth in the attached Letter of Agreement (LOA), the International Brotherhood of Teamsters have received an offer, subject to approval by a majority of the bargaining unit, to amend the Collective Bargaining Agreement by: (1) discontinuing the Performance Incentive Program (PIP) effective June 1, 2008; (2) paying PIP compensation on a pro rated basis covering the period of January through April 2008, based on existing rules and payment timetables; and (3) effective on the closest pay period to June 1, for all bargaining unit employees, providing a 1% increase in all rates in effect on and after May 1, 2008.**

We understand that the PIP has not lived up to expectations and we believe the 1 percent wage increase is likely to result in higher income for members. Unlike the incentive program, it will be guaranteed income.

Again, we urge you to support this amendment. It will provide a guarantee in writing that your hard work will be rewarded with a wage increase. Please carefully review the enclosed ballot materials, including the Letter of Agreement, and make sure you return your ballot by Monday, July 28, 2008. The ballots will be counted on July 28 and 29.

**Exhibit #15 Changes to CBA per IBT Constitution Past Practice at United**

Page Two
June 30, 2008

We are excited that you are now part of the 1.4 million member Teamster family, and we are pleased to present this proposal to you. We believe it will provide you and your family with a brighter and more stable future.

Fraternally,

James P. Hoffa
General President

David P. Bourne
Director, Airline Division

JPH/DPB/wjj
Enclosure(s)

# Exhibit #15 Changes to CBA per IBT Constitution Past Practice at United

**LETTER OF AGREEMENT
BETWEEN
UNITED AIRLINES, INC
AND
THE MECHANICS AND RELATED EMPLOYEES
IN THE SERVICE OF
UNITED AIRLINES, INC.
AS REPRESENTED BY
THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS**

THIS LETTER OF AGREEMENT is made and entered into in accordance with the Railway Labor Act by and between UNITED AIRLINES, INC. (hereinafter referred to as the "Company") and the INTERNATIONAL BROTHERHOOD OF TEAMSTERS (hereinafter referred to as the "Union").

The Company and the Union agree to amend Exhibit A (Wage Schedules) of the 2005-2009 Mechanics Agreement ("Agreement") as set forth below:

1.  <u>One percent pay increase for all employees covered by the Agreement</u>: Effective the beginning of the closest pay period to June 1, 2008, all pay rates in Exhibit A of the Agreement in effect on or after May 1, 2008 shall increase by 1.0 percent.

2.  <u>Discontinuation of Mechanics and Related participation in the Performance Incentive Program</u>: Effective June 1, 2008, Mechanic and Related Employees shall not participate in the Performance Incentive Program and shall not be entitled to any payments or compensation pursuant to the Performance Incentive Program, except that Mechanic and Related Employees shall receive a prorated share of the Performance Incentive Program for 2008, reflecting Company performance against objectives during January through June 1, to be paid out according to the current payment timetable. Accordingly:

    a.  Article XXII, Section Q-1-a and b of the Agreement are null and void effective June 1;

    b.  Article XXII, Section Q-1-c of the Agreement is null and void effective June 1, except as it pertains to prorated Performance Incentive Program compensation accruing to Mechanic and Related Employees for the period January 1 through June 1;

    c.  Article XXII, Section Q-1-d of the Agreement is null and void effective June 1, except as it pertains to prorated Performance Incentive Program compensation accruing to Mechanic and Related Employees for the period January 1 through June 1. Insofar as this Article XXII, Section Q-1-e (meaning of "Qualifying Income") is referenced in any Section of the Agreement (or any Sideletter) other than Article XXII, Section Q-1, "Qualifying Income" shall retain its meaning as set forth in Article XXII, Section Q-1-e.;

    d.  Article XXII, Section Q-1-f through Section Q-1-l of the Agreement are null and void effective June 1, except as they pertain to prorated Performance

# Exhibit #15 Changes to CBA per IBT Constitution Past Practice at United

Incentive Program compensation accruing to Mechanic and Related Employees for the period January 1 through June 1; and

e.    Article XXII, Section Q-1-j of the Agreement is null and void regarding the Performance Incentive Program effective June 1, except as it pertains to prorated Performance Incentive Program compensation accruing to Mechanic and Related Employees for the period January 1 through June 1. This Section Q-1-j will remain in full force and effect as it pertains to the Profit Sharing Program (Article XXII, Section Q-2 of the Agreement).

3.    No change to the Profit Sharing Program: Article XXII, Section Q-2 of the Agreement, pertaining to the Profit Sharing Program, is unchanged.

4.    Entire agreement: The 2005-2009 Mechanics' Agreement is not changed or modified except as set forth in this Letter of Agreement.

IN WITNESS WHEREOF, the parties have signed this Letter of Agreement this _____ day of June, 2008.

FOR UNITED AIRLINES, INC.

**FOR THE MECHANIC AND RELATED EMPLOYEES IN THE SERVICE OF UNITED AIRLINES, INC.**

_____

_____

Marcel Delhommeau
Managing Director Labor Strategy

International Brotherhood of Teamsters

Exhibit #15 Changes to CBA per IBT Constitution Past Practice at United

## *READ CAREFULLY*

# OFFICIAL BALLOT INSTRUCTIONS

## AMENDMENT TO THE COLLECTIVE BARGAINING AGREEMENT FOR UNITED AIRLINE MECHANICS

1) There is a ballot attached to the bottom of this sheet. Read the ballot carefully before placing an "X" in the appropriate box.

2) Detach the ballot card from this sheet at the dotted line.

3) Insert the marked ballot card in the envelope marked "SECRET BALLOT ENVELOPE." Seal the envelope. Do not put your name or any identification on this envelope.

4) Insert your secret ballot envelope into the larger "POSTAGE PAID RETURN ENVELOPE" addresses to the Teamsters Airline Division-UAL Ballot.

5) Seal the RETURN ENVELOPE and deposit it in the mail as soon as possible. YOUR BALLOT MUST BE RECEIVED AT THE LANHAM, MARYLAND POST OFFICE NO LATER THAN 10:00 A.M., Monday, July 28, 2008.

### *TAKE SPECIAL NOTICE:*

Make sure you follow these rules so your ballots will remain secret and be counted.

DO **NOT** write your name or any identification on the ballot or the SECRET BALLOT ENVELOPE.

DO **NOT** deface the laser address on the back of the RETURN ENVELOPE. If the laser address is not intact, your ballot may be voided.

**Your vote is secret.** Your name appearing on the outside of the RETURN ENVELOPE will be used for checking eligibility only. After the RETURN ENVELOPE is checked, the sealed SECRET BALLOT ENVELOPE containing your ballot will be extracted unopened and mingled with other ballots cast so that when it is opened and counted, there will be no possibility of identifying you with the ballot you cast.

## CAST A VOTE ON THE BALLOT BELOW

- - - - - - - - - - - - - - - - - - - - Tear here along dotted line. - - - - - - - - - - - - - - - - - - - -

# OFFICIAL BALLOT— AGREEMENT

Do you agree to amend the Collective Bargaining Agreement?

Put an "X" in the appropriate box

| Check the "YES" box if you agree to amend the CBA as set forth in the LOA. A "Yes" vote means that you approve of the changes described in the LOA. | YES | NO | Check the "NO" box if you do not agree to amend the CBA as set forth in the LOA. A "No" vote means that you do not approve of the changes described in the LOA. |

Exhibit #15 Changes to CBA per IBT Constitution Past Practice at United

SECRET BALLOT ENVELOPE

DO NOT PUT YOUR NAME OR
ANY IDENTIFICATION ON THIS ENVELOPE

Exhibit #15 Changes to CBA per IBT Constitution Past Practice at United



## Exhibit #16 2021-8-25 IBT AD United letter on Vaccine Mandate

August 25, 2021

Brothers and Sisters,

As I write this update, United has provided answers to questions we brought forth last week. The answers are extremely disappointing. The company is giving no consideration to the sacrifices you've made to date to keep this airline running. As previously stated, the IBT fully supports getting the vaccine and we are encouraging our members to take the vaccine. However, the mandatory nature and the short timeframe is putting you, our dedicated and essential members, in peril of losing your career. I believe given what you've done for this company throughout the pandemic, this action is completely unconscionable.

We have offered solutions to the company that would aid our folks in transitioning into retirement or to limit the draconian measure of termination. These measures have been met with stubborn resistance.

We took our time reviewing all legal paths. Based on that research, the IBT does not want to give you a false sense of hope that we may prevail in court. The constitutionality of mandatory vaccines was upheld in the 1905 Supreme Court decision *Jacobson v. Massachusetts*. That case was then reaffirmed in the 1922 *Zucht v. King* decision. In a recent challenge to a Covid 19 vaccine mandate, Supreme Court Justice Amy Coney Barrett denied emergency review of Indiana University's vaccine mandate, thus maintaining the lower courts' decisions upholding the mandate. These cases implicated concerns regarding the constitutionality of mandates because they involved state actions rather than the private sector.

Recently a couple of high-profile actions have taken place regarding private (i.e. non-governmental) company mandates. A federal court in Texas has dismissed a lawsuit challenging a mandatory vaccination program by a private employer in the case *Jennifer Bridges v. Houston Methodist Hosp*. Similarly, a lawsuit filed by a group of pilots at United was dismissed on procedural grounds. In his ruling, the judge noted that even if the procedural defects were fixed, the pilots were unlikely to succeed based on the merits.

Our legal team has also explored a legal strategy of filing a lawsuit to compel United to bargain with us over this mandate.  However, their analysis has concluded that any such lawsuit has very little chance of success.

Given that the courts are not granting relief to employees at private companies, our alternative is to represent you in the grievance procedure using the just-cause standards.

If you have seriously held religious objections or valid medical reasons for objections to the mandate, file them now. The EEOC has determined that those two exceptions are required in any mandated vaccine policy.

Exhibit #16 2021-8-25 IBT AD United letter on Vaccine Mandate

In solidarity,
Vinny Graziano
Coordinator Technician and Related
Airline Division
International Brotherhood of Teamsters

Exhibit #17 AMFA Alaska Airlines letter of notice for changes under the RLA

Letter to Alaska Airlines regarding Good Faith Negotiation of Accommodation of Religious Beliefs Related to COVID-19 Vaccination Mandate

Updated On: Oct 04, 2021

October 1, 2021
*Via electronic mail*

Ben Minicucci
Chief Executive Officer, Alaska Air Group Inc.
Ben.Minicucci@alaskaair.com

Jenny Wetzel
VP Labor Relations, Alaska Airlines Co.
jenny.wetzel@alaskaair.com

Peggy Willingham
VP People, Labor & Strategy, Horizon Air Industries, Inc.
peggy.willingham@horizonair.com

Re: Good Faith Negotiation of Accommodation of Religious Beliefs Related to COVID-19 Vaccination Mandate

Dear Mr. Minicucci, Ms. Wetzel, and Ms. Willingham:

Alaska Air Group Inc. (Alaska Airlines Inc. &. Horizon Air Industries Inc.; hereinafter together "Alaska") has recently announced that it is subject to legal obligation, as a federal contractor, to require that its employees submit to a compulsory vaccination process that must be completed by December 8, 2021. We write at this time to address two issues:

> 1) That the Company **furnish the necessary documentary evidence to confirm** that its federal contracts are subject to a renewal or re-opener such that the December 8 deadline would apply; and

> 2) That the Company **immediately commence negotiations with AMFA** to address the reasonable accommodations that will be provided to individuals who object to vaccination based on sincerely held religious beliefs or disability.

1) Vaccination Deadline

On September 9, 2021, President Biden signed Executive Order 14042, which mandated the development of "COVID-19 safeguards" applicable to federal contractors. The required

Exhibit #17 AMFA Alaska Airlines letter of notice for changes under the RLA

safeguards become enforceable on private employers via their insertion into any new contract or contract extension/renewal with a federal agency.

Pursuant to the Executive Order, on September 24, 2021, the Safer Federal Workforce Task Force (Task Force) issued Guidance for Federal Contractor and Subcontractors (Guidance), which provided that federal contractors will be required to provide for the vaccination of their employees "except in limited circumstances where an employee is legally entitled to an accommodation" based on religious beliefs or disability, which would include medical conditions. Employees are deemed "fully vaccinated" two weeks after their completion of a two-dose or single dose vaccination process.

By its own terms, the Executive Order became effective "immediately." The Guidance more specifically provides that covered contractor employees must be fully vaccinated no later than December 8, 2021. However, because the mandate is contractually triggered, it would appear that contractors who are in the middle of a contract would not be required to implement the new program until the existing contract is extended or renewed. Indeed, the Guidance states that, after December 8, "all covered contractor employees must be fully vaccinated by the first day of the period of performance on a *newly awarded covered contract*, and by the first day of the period on an exercised option or extended or renewed contract *when the clause has been incorporated in the covered contract*."

In view of the referenced language from the Guidance, we require that you furnish AMFA with the contract(s) that embodies the implementing vaccination language. To the extent no contract yet exists incorporating such language, no federal vaccination mandate would be in effect. It is our position that any AMFA-represented employee who is discharged based on his non-vaccinated status prior to the effective date of Alaska's federal contractor obligation would be terminated without just cause.

2) Negotiations re Religious/Disability Accommodation

With respect to religion and disability-based accommodations, the Guidance provides that the contractor is responsible for evaluating such requests regardless of the employee's place of performance. The Guidance appropriately recognizes that the Executive Order is subordinate to federal statutory law.

Title VII of the Civil Rights Act of 1964 is a federal law that, inter alia, prohibits employment discrimination based on religious belief. 42 U.S.C. § 2000e-2. The Act broadly defines the term "religion" to include "all aspects of religious observance and practice, as well as belief..." 42 U.S.C. § 2000e(j). Consistent with this statutory definition, the Equal Employment Opportunity Commission has promulgated the following regulatory standard:

> In most cases whether or not a practice or belief is religious is not at issue. However, in those cases in which the issue does exist, the Commission will define religious practices to *include moral or ethical beliefs as to what is right and wrong* which are sincerely held with the strength of traditional religious views.

Exhibit #17 AMFA Alaska Airlines letter of notice for changes under the RLA

\* \* \*

The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee.

29 C.F.R. § 1605.1.

"Title VII's protections are not limited to beliefs and practices that courts perceive as 'acceptable, logical, consistent, or comprehensible to others,'" nor do E.E.O.C. guidelines on religious discrimination require a specific religious group to advocate the belief of the individual employee. *Cloutier v. Costco Wholesale*, 311 F. Supp.2d 190, 196 (quoting *Thomas* v. *Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981)) (citing 29 C.F.R. § 1605.1).

As the United States Supreme Court has held with respect to a court's evaluation of asserted religious beliefs:

In such an intensely personal area, of course, the claim of the [adherent] that his belief is an essential part of a religious faith must be given great weight. . . . The validity of what he believes cannot be questioned. Some theologians, and indeed some examiners, might be tempted to question the existence of the registrant's 'Supreme Being' or the truth of his concepts. But these inquiries are foreclosed to Government.

*United States v. Seeger*, 380 U.S. 163, 184 (1965).[1]

Once an employee has established that he/she has a sincerely held religious belief, practice or observance that would prevent him/her from obtaining a COVID vaccination, the employer has an affirmative duty to accommodate that individual provided that it would not impose an *undue hardship* on the operation of the employer's business. 42 U.S.C. § 2000e(j). The accommodation process should include the religious objector in an interactive dialogue. *Thomas v. National Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000) ("This statutory and regulatory framework [of Title VII], like the statutory and regulatory framework of the Americans with Disabilities Act (ADA), involves an interactive process that requires participation by both the employer and the employee."); *EEOC v. Ithaca Industries, Inc.*, 849 F.2d 116, 118 (4th Cir. 1988) (noting that the district court "found, as a matter of fact, that [the employer] made no *specific* effort to accommodate [the employee]"); *Jamil v. Sessions*, 2017 U.S. Dist. LEXIS 31815, *26 (E.D.N.Y. March 6, 2017); *Elmenayer v. ABF Freight Sys.*, 2001 U.S. Dist. LEXIS 15357, 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001), aff'd, 318 F.3d 130 (2d Cir. 2003); *EEOC v. Aldi*, 2008 U.S. Dist. LEXIS 25206, 2008 WL 859249(W.D. Pa. Mar. 27, 2008); *Kenner v. Domtar Industries, Inc.*, 2006 U.S. Dist. LEXIS 14478, 2006 WL 662466 (W.D. Ark. March 13, 2006).

The EEOC has recognized that reasonable accommodation of an unvaccinated employee's religious exemption might include preventive measures such as social distancing, periodic tests

# Exhibit #17 AMFA Alaska Airlines letter of notice for changes under the RLA

for COVID-19 and wearing a face mask or other protective gear. EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws at K.2 (May 28, 2021).[2]

The statutory duty to bargain is at least as broad under the RLA as it is under the NLRA. *See, e.g., First National Maintenance*, 452 U.S. 666, 686, n. 23 (1981). As a general matter, employees' health benefits are a mandatory subject of bargaining about which an employer has an obligation to bargain in good faith under the NLRA. *E.I. DuPont De Nemours, Louisville Works*, 355 NLRB 1084 (2010) *enf. denied* 682 F.3d 65, 401 U.S. App. D.C. 172 (D.C. Cir. 2012); *United Hosp. Medical Center.*, 317 NLRB 1279, 1281 (1995). The same should result under the RLA. See, *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383 (1969) (noting that "[t]he Court has in the past referred to the NLRA for assistance in construing the Railway Labor Act"); *Hawaiian Airlines v. Norris*, 512 U.S. 246, 263 & n. 9 (1994) (recognizing that the two statutes differ in "language, history, and purpose," but adopting under the RLA the NLRA standards for whether state law claims are preempted).

Because the implementation of a compulsory vaccination program prior to the existence of any federal mandate, and the scope of the reasonable accommodation provided for religious objections and the disabled once these vaccinations begin, both impact on the terms and conditions of employment of AMFA members, we request the immediate initiation of negotiations to address these issues.

Sincerely,
Earl Clark
Region I Director

cc:

AMFA:
Bret Oestreich, National Director, Bret.Oestreich@amfanatl.org Jarod Mills, Local 14 Airline Representative (Alaska), jmills@amfa14.org
Bobby Shipman, Local 14 Airline Representative (Horizon), Bobby.Shipman@horizonair.com
Jeff Heard, Local 32 Airline Representative (Alaska), Knikvalleyfilms@mtaonline.net
Lee Seham, AMFA Legal, LSeham@ssmplaw.com
Nicholas Granath, AMFA Legal, ngranath@ssmplaw.com
Lucas Middlebrook, AMFA Legal, lmiddlebrook@ssmplaw.com

Alaska:
Sonia Alvarado, Sonia.Alvarado@alaskaair.com
Joe Wonderly, joe.wonderly@alaskaair.com

---

[1] While the Seeger decision involved the application of a conscientious objector to avoid military service, the Court's standard of judicial analysis of religious belief has been widely applied in the Title VII context and adopted by the EEOC. (29 C.F.R. § 1605.1).

Exhibit #17 AMFA Alaska Airlines letter of notice for changes under the RLA

[2] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.



Exhibit #18 AMFA SWA Negotiates Equal Pay for All Techs

# AIRCRAFT MECHANICS FRATERNAL ASSOCIATION

National Office: 7853 E. Arapahoe Court, Suite 1100 • Centennial, CO 80112
Tel: 303.752.AMFA (2632) • Fax: 303.362.7736

# Memorandum

**To:**     AMFA-SWA Membership
**From:**   National Executive Council and Local Leadership
**Date:**   November 4, 2021
**Re:**     SWA Vaccination Participation Pay Program

Dear AMFA-SWA Members:

Your Airline Representatives (ALRs) were in discussion with Southwest Airlines (SWA) yesterday regarding vaccination related issues and we wanted to inform you of an important update to the Company's Vaccination Participation Pay Program, which now extends to those employees that submit a request for an accommodation before November 24, which is later approved by SWA. The Company provided the following explanation of the VPPP's extended applicability:

> **Who is eligible for the Southwest Airlines Vaccination Participation Pay Program (VPPP)?**
>
> All Southwest Airlines (SWA) Employees who become fully vaccinated against COVID-19 and submit proof of their vaccination status by noon Central on November 24, 2021, are eligible. This includes Employees on a leave of absence and Employees who submit a request for an accommodation before November 24 that is ultimately approved. Employees whose accommodation requests are approved after December 16 may receive their VPPP incentive of 16 hours payment after December 20, 2021. Employees who retire, leave the Company, or are terminated before the payment date of December 20, 2021, are not eligible. General questions about the vaccine requirement: Contact the SWA Employee Service Center Monday through Friday 7 a.m.to 7 p.m. CT by calling (877) 792-4792; press 6, then press 4 to speak with a Team Member.

Our primary focus remains to protect your collective bargaining agreements as well as your job and ability to earn. This message is directed to those of you who, for any reason, have not yet either been vaccinated or applied for an exemption/accommodation from mandatory vaccine policies at Southwest.

As you will recall, on October 21, 2021, AMFA published the Memo: COVID Vaccination Mandate where we stress the reality of the situation, which is there are two options only, either: 1) start the vaccination process or 2) apply for a medical or religious exemption by November 24, 2021. It is important for an employee who objects to vaccination based on medical reasons or **sincerely held religious beliefs to apply for an exemption with SWA as they** may be eligible for a reasonable accommodation that does not require vaccination. On October 8, 2021, we provided guidance via the Memo: Mandatory Vaccinations - Seeking a Religion-Based Accommodation for those who believe they may qualify for such a reasonable exemption.

## Exhibit #18 AMFA SWA Negotiates Equal Pay for All Techs

There is no third option that will not risk your job or your income. The individual choice is up to you, but only if you do not wait too long for the uncertainty or the unknown situation.

Fraternally,

Bret Oestreich
National President

Dale Dixon
Local 11 President

Rui Leonardo
Local 32 President

George Melachrinakis
Local 4 President

Joel Behnken
Local 18 President

Exhibit #19 AMFA Technicians Vaccine Mandate Information

📞 303-752-2632                                                    Login  Register



HOMEABOUT AMFAQUICK LINKSLOCALS
▶ᴇ REPRESENTED CARRIERSLATEST NEWSJOIN AMFA
MEMBER RESOURCES🔍



# MEMO: EMPLOYER MANDATED VACCINATIONS RE COVID

Aug 08, 2021

## Memorandum

**To:**     All AMFA Local LECs
**From:**   National Executive Council
**Subject:** Employer Mandated Vaccinations re Covid
**Date:**    August 8, 2021

In the wake of recent news, particularly with Friday's report that UAL has become the first major airline to seek a company-wide mandated vaccination program, I wanted to reach out to you now after consulting with Legal in order to set out the following.

To date, no airline employing AMFA-represented members has sought to mandate vaccination against the COVID-19 virus as a condition of employment and at this time we are not on notice that any will. There has also been no invitation from any carrier to open bargaining with AMFA over a vaccine program, nor is there any ongoing bargaining that would provide that opportunity, nor is any scheduled to commence in the immediate future. In both rank and file and union leadership there are strong opinions on the vaccine and especially on mandatory vaccination and reasonable minds can differ.

Exhibit #19 AMFA Technicians Vaccine Mandate Information

Following consultation with Legal and given the current legal landscape on this issue, AMFA National does not plan to initiate any lawsuit to stop any employer mandated vaccination. That said, National will not interfere with any Local that decides to take legal action, but it will not participate financially or support such a legal challenge.

Following discussion of the policy aspects with the NEC and consultation with Legal, AMFA National takes the following position, which any Local is free to adopt as its own – or not to:

I. AMFA National supports all reasonable efforts based on medicine and science to combat the pandemic, including **voluntary vaccination.**

II. AMFA National recognizes the decision to get vaccinated is an **individual choice**, not one that belongs to anyone else, especially any employer.

III. Without waiver of any legal rights of AMFA, its Locals, its members or of its represented employees, AMFA National **takes no position on any employer-driven responses** to COVID-19, including vaccination programs; therefore it does not now endorse or oppose any such response.

IV. AMFA National **supports the defense under existing contract rights** of any represented employee's individual, reasonable choice in response to any employer-mandated vaccine program to protect those who seek an exemption or delay from vaccination based on a reasonable accommodation of their medical, physical, or any other recognized legal grounds such as religion – from adverse action by management.

On Behalf of the NEC,

Bret Oestreich
National Director

Download:
📄 20210808_Memo_re_COVID_Vaccine.pdf