UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JAMES E. SEITZ,<br><br>        Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al.,<br><br>        Defendants. | Case No. 23-cv-01716-LB<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART**<br><br>Re: ECF No. 17 |

### INTRODUCTION

The plaintiff James Seitz, who is representing himself, was a technician for United Airlines and a member of the International Brotherhood of Teamsters union. During the COVID-19 pandemic, United implemented a vaccine requirement for its U.S. employees. The plaintiff requested a religious accommodation but did not timely provide supporting evidence and did not get vaccinated. He also filed a grievance asserting that he should be allowed to use his sick leave if removed from service for refusing the vaccine, but the union declined to pursue the grievance. United then terminated the plaintiff for not getting vaccinated. In response, the union exhausted the grievance process for the plaintiff, but the termination was upheld.

The plaintiff sued the International Brotherhood of Teamsters (the national organization that was a party to the collective bargaining agreement (CBA) with United) and Teamsters Local 986 (the local chapter), asserting various claims including Title VII religious discrimination, breach of

ORDER – No. 23-cv-01716-LB

the union's duty of fair representation, and honest-services fraud. The defendants moved to dismiss the complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6), primarily on the grounds that six of the claims are "artfully pled" fair-representation claims that are barred by the statute of limitations and the remaining claims are inadequately pled and preempted by the Railway Labor Act. The court grants the motion in part and dismisses (without prejudice) all claims except the two Title VII claims.

### STATEMENT

**1. United's COVID-19 Vaccine Policy**

The plaintiff worked for United as an aircraft technician for thirty-two years.[1] A CBA between United and the International Brotherhood of Teamsters governed the terms of his employment.[2] Teamsters is a national labor union and Teamsters Local 986 was the plaintiff's local chapter. The plaintiff alleges that both entities were his "certified bargaining representatives."[3]

In August 2021, United announced a COVID-19 vaccination requirement for its aircraft technicians. Those with religious objections could request an accommodation if they submitted a letter from a third party attesting to their sincere religious beliefs within three days of the request. If they did so, they would be "placed . . . on unpaid leave without medical or pension benefits for an extended unknown length of time" and would have their seniority "permanently reduce[d]." The defendants "gave no pushback" to this policy and did not file a grievance against United.[4] (The union did file an EEOC complaint alleging that the mandatory unpaid leave for those whose

---

[1] Compl. – ECF No. 1 at 6 (¶ 3). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents and sometimes also to the page numbers at the bottom of documents.

[2] *See, e.g., id.* at 7 (¶ 8), 8 (¶ 14) (mentioning the CBA); CBA, Ex. A to Pantoja Decl. – ECF No. 17-1 at 3–351. The court judicially notices the CBA under the incorporation-by-reference doctrine. *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142–43 (N.D. Cal. 2019) ("Courts regularly take judicial notice of a CBA in evaluating a motion to dismiss.") (cleaned up); *Hernandez v. Sysco Corp.*, No. 16-cv-06723-JSC, 2017 WL 1540652, at *2 (N.D. Cal. Apr. 28, 2017) ("A court may take judicial notice of a CBA in evaluating a motion to dismiss.").

[3] Compl. – ECF No. 1 at 6 (¶¶ 4–5).

[4] *Id.* at 7 (¶¶ 7, 10), 8 (¶ 12).

ORDER – No. 23-cv-01716-LB          2

religious accommodations were approved was retaliatory and discriminatory.[5] But that complaint was allegedly withdrawn without technicians' knowledge after the union appointed a former United executive as its Airline Division director.[6])

The plaintiff alleges that the vaccine policy changed his terms of employment without following the CBA's process for doing so, in violation of the CBA, the Railway Labor Act, and the union's constitution.[7] He also alleges that United "rewarded" those who got vaccinated with "extra pay," which was "discriminatory in violation of the CBA."[8] And he contrasts the union's treatment of United aircraft technicians with its treatment of UPS aircraft technicians (who are part of the same national union but are affiliated with Teamsters Local 2727): "Local 2727 followed the [Railway Labor Act] and their CBA and protected their technicians from religious discrimination" by resisting a "vaccine mandate without a letter of agreement."[9] According to the plaintiff, "[n]o other [u]nion at any other airline allowed their aircraft mechanics to be discriminated against and effectively terminated for requesting a company religious accommodation."[10]

### 2. The Plaintiff's Termination Under the Vaccine Policy

On August 31, 2021, the plaintiff requested a religious accommodation to the vaccine mandate. His request said "I cannot receive a COVID-19 vaccine because to do so would violate my sincerely held religious beliefs. All [of] the currently available COVID-19 vaccines used cell lines originating from aborted children." United denied the request on September 7, 2021, on the ground that the plaintiff did not submit the third-party verification letter within the three-day

---

[5] EEOC Compl., Ex. 3 to Compl. – ECF No. 1 at 50–51.
[6] Compl. – ECF No. 1 at 15 (¶¶ 51–54).
[7] *Id.* at 7 (¶¶ 7–8, 11), 16–17 (¶¶ 59–60).
[8] *Id.* at 7 (¶ 9), 11 (¶ 29); United Newsletter, Ex. 6 to Compl. – ECF No. 1 at 59–60.
[9] Compl. – ECF No. 1 at 16 (¶¶ 55–58), 17 (¶ 64).
[10] *Id.* at 17–18 (¶¶ 65–70).

timeframe. (The plaintiff characterizes that timeframe as an "unreasonable" one that "effectively terminated his [thirty-two] year career at United.")[11]

On September 19, 2021, the plaintiff filed an EEOC complaint for religious discrimination against United and the union. The complaint was for United's allegedly "refusing to accept his religious exemption against taking an experimental vaccination that had at that time[,] based on the FDA and CDC [Vaccine Adverse Event Reporting System] reports[,] already killed 14,000 people." The EEOC dismissed the charge and notified the plaintiff of his right to sue on January 10, 2023.[12]

On September 24, 2021, the plaintiff filed a grievance with the union requesting the right to use his personal sick time in the event he was removed from service due to being unvaccinated.[13] The plaintiff "cited past practice" by United and the union "during the pandemic just months earlier" when "technicians were placed on paid sick leave even though they were not sick, until their time of separation."[14] He pointed to the CBA's language on sick pay, which "may . . . be utilized when an employee's presence would jeopardize the health of others because of exposure to a contagious disease."[15] And he again cited vaccine-adverse-reaction statistics.[16] United denied the grievance and the union closed it (without the plaintiff's consent), telling the plaintiff that the grievance was premature and the union would pursue it if he was terminated. The union allegedly "never provided an interpretation or rational reason why [it] ignored the clear and unambiguous epidemic sick leave language in the CBA." Technicians who obtained a medical (as opposed to religious) vaccine accommodation "retained the use of sick time which included other contractual benefits like health insurance and seniority accrual."[17]

---

[11] *Id.* at 8 (¶ 12); Req. for Religious Accommodation, Ex. 1 to Compl. – ECF No. 1 at 46–47.

[12] Compl. – ECF No. 1 at 8 (¶ 13); EEOC Dismissal and Notice of Rights, Ex. to Compl. – ECF No. 1 at 45; VAERS Report, Ex. 2 to Compl. – ECF No. 1 at 48–49.

[13] Compl. – ECF No. 1 at 8 (¶ 15); Grievance, Ex. 4 to Compl. – ECF No. 1 at 52–54.

[14] Compl. – ECF No. 1 at 9 (¶ 16).

[15] *Id.* at 8 (¶ 15); CBA – ECF No. 17-1 at 107 (p. 104) (Art. 11 § B.1)

[16] Compl. – ECF No. 1 at 9 (¶ 17).

[17] *Id.* at 9–10 (¶¶ 17–21), 11 (¶ 28).

The plaintiff submitted the third-party letter attesting to his religious beliefs on October 26, 2021. The next day, United confirmed he was unvaccinated and held him out of service pending investigation. On November 2, 2021, the plaintiff, United management, and union representatives met to discuss the investigation's findings. The union representatives did not advocate for the plaintiff's sick-leave rights as the plaintiff requested. The plaintiff provided exhibits and a statement and cited vaccine-adverse-reaction statistics. In the statement, he described his religious objection: "My objection was based on the ingredients in the shot and the use of aborted fetus cells in the creation of the vaccine," specifically human-embryo kidney cells. United then terminated the plaintiff on November 5, 2021, citing the vaccine policy and the plaintiff's failure to timely submit the third-party letter.[18]

The union appealed the plaintiff's termination through the process outlined in the CBA. The System Board of Adjustment, which is the final step in the grievance procedure, met on January 20, 2022, to review the plaintiff's case. He requested that a stenographer be present, but the union responded that stenographers are not allowed at Board hearings. The union did not "argue for the contractual right to use [s]ick [t]ime during a pandemic." Two of the Board members as well as the presenter at the hearing allegedly "had a documented animus against the [p]laintiff for his [longstanding] and outspoken criticism" of the Teamsters' "concessionary contracts" and the Teamsters' "long-established pattern of failing to enforce the . . . CBA."[19]

The plaintiff made various arguments during the hearing, including about judicial decisions that had disallowed government vaccine mandates, vaccine-adverse-reaction statistics, and vaccine efficacy.[20] On January 31, 2022, he was notified that the Board had denied his grievance and the union would no longer pursue it.[21]

---

[18] *Id.* at 10 (¶¶ 22–25); Pl.'s Statement, Ex. 5 to Compl. – ECF No. 1 at 55–58.

[19] Compl. – ECF No. 1 at 11–12 (¶¶ 26, 30–32); CBA – ECF No. 17-1 at 193 (p. 190) (Art. 19 § C) (grievance procedure for discharges); Email from M. DesAngles, Ex. 7 to Compl. – ECF No. 1 at 61.

[20] Compl. – ECF No. 1 at 12–14 (¶¶ 34–44); Pl.'s Statement, Ex. 10 to Compl. – ECF No. 1 at 67–69.

[21] Compl. – ECF No. 1 at 14 (¶ 45); Grievance Closeout Letter, Ex. 11 to Compl. – ECF No. 1 at 70.

1    After the grievance concluded, on February 11, 2022, the plaintiff wrote to a union

2 representative to request an arbitration with counsel of his choice under the Railway Labor Act.

3 The representative denied the request, citing the CBA's grievance procedure.[22]

### 3. Other Allegations

The complaint also has allegations about conduct by the union unrelated to the vaccine policy. The plaintiff alleges an "established pattern of fraud" that is "considered Labor Union Racketeering" by the Department of Labor Office of Inspector General and is "a RICO violation pattern of activity." For example, the union has allegedly relied on "flawed legal opinions" to "deny United technicians their [Railway Labor Act] rights to move . . . grievances forward."[23]

### 4. Procedural History

The complaint has nine claims: religious discrimination in the form of "failure to accommodate" and retaliation under Title VII, 42 U.S.C. § 2000e et seq. (claims one and two) (claim one also alleges CBA violations in the form of religious discrimination and retaliation and a violation of the Railway Labor Act by denial of the right to arbitration); breach of the duty of fair representation (claim three); violation of the statutory right to arbitration under the Railway Labor Act, 45 U.S.C. § 151 et seq. (claim four); violation of the Railway Labor Act, 45 U.S.C. § 152, by "receiv[ing] money and other things of value from [United] both during and after the negotiations of concessionary contracts" (claim five); denial of contractual and statutory rights based on, among other things, the denial of sick leave and the alleged religious discrimination (this claim also alleges honest-services fraud, bribery and RICO violations) (claim six); and honest-services fraud for receipt of prohibited payments by union representatives (against count-specific

---

[22] Compl. – ECF No. 1 at 14–15 (¶¶ 46–50).
[23] *Id.* at 19–31.

ORDER – No. 23-cv-01716-LB                 6

defendants not identified elsewhere in the complaint as defendants: Clacy Griswold (claim seven), Bobby Fisher (claim eight), and Vinnie Graziano (claim nine)).[24]

The court has federal-question jurisdiction and supplemental jurisdiction over any state-law claims (liberally construing the complaint). 28 U.S.C. §§ 1331, 1367(a). All parties consented to magistrate-judge jurisdiction.[25] *Id.* § 636(c). The court can decide the motion without oral argument. N.D. Cal. Civ. L.R. 7-1(b).

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

---

[24] *Id.* at 31–44 (¶¶ 40–107).

[25] Consents – ECF Nos. 5, 13, 33–35.

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

Fraud allegations elicit a more demanding standard. "In alleging fraud. . . , a party must state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The plaintiff must [also] set forth what is false or misleading about a statement, and why it is false." *Id.* (cleaned up). Like the basic "notice pleading" demands of Rule 8, a driving concern behind Rule 9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (cleaned up); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

Federal courts must construe pro se complaints liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of his claims and the grounds upon which they rest. *Hearns*, 413 F.3d at 1043. He need not plead specific legal theories so long as sufficient factual averments show that he may be entitled to some relief. *Id.* at 1041.

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to

amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

### 1. Claims One Through Six

The defendants first contend that like claim three, which is explicitly a duty-of-fair-representation claim, the rest of claims one through six are "artfully pled" fair-representation claims that were not filed within the six-month statute of limitations.[26] The plaintiff counters that claims one and two, at least, are Title VII claims that are timely because his EEOC right-to-sue letter gave him until ninety days after its issuance (January 10, 2023).[27]

"The scope of the duty of fair representation is generally coextensive with the scope of the union's statutory authority as the exclusive bargaining agent." *McNamara-Blad v. Ass'n of Prof'l Flight Attendants*, 275 F.3d 1165, 1169 (9th Cir. 2002). "Because a union has exclusive statutory authority to represent its members, it has a corresponding legal obligation 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Demetris v. Transp. Workers Union of Am.*, 857 F.3d 803, 809 (9th Cir. 2017) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "A union breaches its duty of fair representation 'when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Id.* (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)).

The defendants invoke the language "artfully pled" to support the notion that claims can be recharacterized as fair-representation claims such that they are subject to the statute of limitations for fair-representation claims. The "artful pleading" doctrine normally applies in the removal and preemption contexts: "a court may recharacterize a plaintiff's [state-law] claims as federal if the

---

[26] Mot. – ECF No. 17 at 13–16.

[27] Opp'n – ECF No. 22 at 11 (citing EEOC Dismissal and Notice of Rights, Ex. to Compl. – ECF No. 1 at 45).

particular conduct complained of is governed exclusively by federal law." *Redwood Theatres, Inc. v. Festival Enters.*, 908 F.2d 477, 479 (9th Cir. 1990) (cleaned up). With respect to preemption, "to successfully bring a non-preempted state law claim against a union, a union member 'must make a showing of additional duties [in the CBA] beyond the normal incidents of the union-employee relationship.'" *Medina v. SEIU-United Healthcare Workers W.*, No. C 13-00858 SBA, 2013 WL 3157923, at *6 (N.D. Cal. June 20, 2013) (quoting *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008)).

Here, claims one, two, four, and five are federal claims, so preemption is not relevant. That said, there is some logic to the notion that a fair-representation claim that is simply given a different label should be treated by the court as a fair-representation claim. *Townsell v. Ralphs Grocery Co.*, No. 09 CV 0793 JM (AJB), 2009 WL 1544737, at *5 (S.D. Cal. June 3, 2009) (five claims asserted by member against union were dismissed as artfully pled fair-representation claims because they fell within the scope of the representative relationship between the two). The court thus considers whether claims one, two, four, and five are distinct from the fair-representation claim (claim three); *cf. Colum. Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 843 (9th Cir. 2022) ("[W]hen a claim styled as a federal statutory claim turns in substance on the provisions of the CBA rather than on an independent statutory right, the federal court must direct the claim to the proper adjudicator.").

Claims one and two are Title VII claims that may be asserted independently of the duty of fair representation. *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 860–61 (9th Cir. 2016). The court thus denies the motion to dismiss those claims.

Claims four and five are for violations of the Railway Labor Act. In claim four, for example, the plaintiff alleges that he was "denied access to a stenographer and access to an arbitration decided by a single neutral arbitrator presiding over the parties' System Board of Adjustment (even with non-voting partisan members seated) because there is no other forum that can vindicate his contractual rights."[28] This appears to not be a fair-representation claim, and the defendants

---

[28] Compl. – ECF No. 1 at 35 (¶ 68).

make a more specific argument: they did not deny any arbitration right because "the System Board of Adjustment upheld [the plaintiff's] termination in a final and binding decision precluding the Union from pursuing his grievance further in arbitration in accordance with Article 19 of the CBA."[29]

Under the Railway Labor Act, the present case is a "minor dispute," because it "result[s] from attempts to enforce existing contractual obligations and rights." *Ass'n of Flight Attendants v. Mesa Air Grp., Inc.*, 567 F.3d 1043, 1047 (9th Cir. 2009). Minor disputes are subject to mandatory arbitration and judicial review is "limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Edelman v. W. Airlines, Inc.*, 892 F.2d 839, 842 (9th Cir. 1989). "Claims under the [Railway Labor Act] must be brought within six months after their accrual date." *Herrera v. Command Sec. Corp.*, 837 F.3d 979, 985 (9th Cir. 2016). "Equitable tolling may pause the running of the statute of limitations where a plaintiff has diligently pursued her claim but circumstances out of the plaintiff's control prevented her from timely filing." *Id.*

Here, the plaintiff was not completely denied an arbitration, because his System Board of Adjustment hearing was an arbitration. *Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985). And although the defendants technically did not mention the Railway Labor Act in their statute-of-limitations argument, the result is the same because the limitations period is six months. The plaintiff does not contest timeliness for these claims, even though he does for others like his Title VII claims.[30] Because the plaintiff's arbitration concluded in January 2022, the complaint-filing date in April 2023 was untimely, so the court dismisses the Railway Labor Act claims.

---

[29] Mot. – ECF No. 17 at 15.

[30] Opp'n – ECF No. 22 at 11–13.

1    As for claim six, the defendants contend (again separately from their "artfully pled" argument)
2    that the claim is "vague and unintelligible."[31] The claim is for denial of contractual and statutory
3    rights and also alleges honest-services fraud, bribery and RICO violations based on contract
4    negotiations in 2011, 2015 and 2016.[32] The court dismisses this claim without prejudice as
5    unintelligible, so that the plaintiff has an opportunity to clarify it if he amends his complaint.
6    *Abellan v. World Sav. Bank*, FSB, No. C-11-4765 EMC, 2012 WL 13070996, at *1 (N.D. Cal. Jan.
7    27, 2012) (a claim can be unintelligible where it "recite[s] a litany of statutes and authority"
8    without a sufficient "explanation as to how it relates to the present action").

9    That leaves claim three, the fair-representation claim. There is a six-month statute of
10   limitations for claims alleging a breach of the duty of fair representation. *Galindo v. Stoody Co.*,
11   793 F.2d 1502, 1509 (9th Cir. 1986); *Brown v. Alaska Airlines, Inc.*, 642 F. Supp. 3d 1259, 1266
12   (W.D. Wash. 2022). This period generally begins to run "when an employee knows or should
13   know of the alleged breach of duty of fair representation by a union." *Galindo*, 793 F.2d at 1509;
14   *Stone v. Writer's Guild of Am. W., Inc.*, 101 F.3d 1312, 1314 (9th Cir. 1996). As already
15   explained, the plaintiff does not contest timeliness, his arbitration concluded in January 2022, and
16   the complaint filing date was in April 2023. The court thus dismisses claim three as untimely.

17   The last issue for claims one through six is whether, as the defendants contend, the
18   International Brotherhood of Teamsters is the only valid defendant because unlike Teamsters
19   Local 986, it is the exclusive bargaining representative under the CBA. According to the
20   defendants, this is shown by the CBA's cover page, preamble, and signatories.[33] Although the
21   plaintiff did not respond to this argument, the defendants raise it only as to fair-representation
22   claims, not Title VII claims. *See Dycus v. N.L.R.B.*, 615 F.2d 820, 827 (9th Cir. 1980) ("The
23   exclusive bargaining representative of a bargaining unit has a statutory duty fairly to represent all
24   employees within the unit."). If the plaintiff amends his complaint to re-assert a fair-representation

---

[31] Mot. – ECF No. 17 at 15.

[32] Compl. – ECF No. 1 at 36–37 (¶¶ 73–83).

[33] Mot. – ECF No. 17 at 13–14.

claim, though, the court notes that it can be asserted against the International Brotherhood of Teamsters only.

### 2. Claims Seven Through Nine

The defendants also move to dismiss the honest-services-fraud claims (claims seven through nine) on four grounds: the plaintiff asserted them against individual defendants who were not properly named or served, they are time barred, the Railway Labor Act preempts them, and the plaintiff failed to plead fraud with particularity under Rule 9(b).[34] The court dismisses these claims.

Liberally construed, the plaintiff's fraud claims are RICO claims. They are about "concessionary contracts" and CBA negotiations unrelated to United's vaccine policy, and the most recent conduct alleged was a $1.5 million payment from United to the union in June 2017 and a "knowingly false statement" by defendant Vinnie Graziano in December 2020.[35] The plaintiff appears to have filed lawsuits over this conduct before; in their briefing, the defendants mentioned those lawsuits but argued only that the plaintiff is a "vexatious litigant."[36]

First, the defendants argue that the fraud claims are state-law claims that are preempted by the Railway Labor Act. The fraud claims are federal claims, though. Also, the fraud claims appear to be based on an independent statutory right such that they are not subject to arbitration. *Colum. Exp. Terminal*, 23 F.4th at 843 ("[W]hen a claim styled as a federal statutory claim turns in substance on the provisions of the CBA rather than on an independent statutory right, the federal court must direct the claim to the proper adjudicator.").

Second, the defendants contend that these claims are untimely because the statute of limitations for RICO claims is four years. The plaintiff responds that he first learned of certain "fraudulent statements" in June 2021, after he submitted a FOIA request (the complaint cites

---

[34] *Id.* at 16–19.

[35] Compl. – ECF No. 1 at 39 (¶ 88(k)), 43 (¶ 103(e)).

[36] *Id.* at 26 (¶ 10); Mot. – ECF No. 17 at 17 n.2.

"exhibit #27" as the FOIA request).[37] The defendants' reply quotes exhibit 27 and asserts that no documents were provided in response to the plaintiff's FOIA request.[38] The court has reviewed and re-reviewed the complaint and its attachments but cannot find exhibit 27.

The limitations period for civil RICO claims is four years, and it "begins to run when a plaintiff knows or should know of the injury which is the basis for the action." *Stitt v. Williams*, 919 F.2d 516, 525 (9th Cir. 1990). Relatedly, "the deprivation of honest services alone 'does not constitute concrete financial loss' for purposes of pleading RICO's statutory standing requirement." *Portfolio Invs. LLC v. First Sav. Bank Nw.*, 583 F. App'x 814, 816 (9th Cir. 2014) (quoting *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001)). To have statutory standing, "a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). Here, the plaintiff alleges that because of the honest-services fraud, he has "been deprived of contract language, seniority rights, job security, wages, pension benefits and his statutory grievance rights under the [Railway Labor Act]."[39]

For now, the court dismisses the three RICO claims without prejudice because the plaintiff did not provide exhibit 27. Given that some of the alleged fraudulent conduct is quite old, it appears likely that the plaintiff at least should have known of his alleged injury more than four years before he filed this case. But if he amends his complaint to re-assert these claims, the plaintiff must also plead the claims with particularity under Rule 9(b). That is, he must describe "the 'who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. And he must plausibly allege that the honest-services fraud proximately caused injury to his property.

---

[37] Opp'n – ECF No. 22 at 27; Compl. – ECF No. 1 at 26 (¶ 10).

[38] Reply – ECF No. 23 at 9.

[39] Compl. – ECF No. 1 at 40 (¶ 92), 42 (¶ 100), 44 (¶ 107).

**CONCLUSION**

The court dismisses all claims except the Title VII claims without prejudice. The plaintiff must file any amended complaint within twenty-eight days and must attach as an exhibit a blackline of the amended complaint against the current complaint. This resolves ECF No. 17.

**IT IS SO ORDERED.**

Dated: October 17, 2023

_____
LAUREL BEELER
United States Magistrate Judge